[S. F. No. 2541. In Bank.—October 13, 1903.]

## HENRY J. WITHERS, Respondent, v. JOHN J. MOORE, Appellant.

Sale of Foreign Cargo of Coal—Contract of Shipper to Pay Duty—Reduction after Delivery—Local Custom—Inadmissible Evidence.—Where a contract for the sale and shipment of a foreign cargo of coal contained an express agreement that the cargo was to be delivered in San Francisco to the purchaser at a fixed price per ton, free of expense for freight, insurance, exchange, or duty, all of which were to be paid by the shipper, parol evidence is not admissible to vary the specific and certain terms of the contract by proof of a local custom in San Francisco in reference to coal bought in a foreign country, that in case of a reduction of duty after the contract was made and the cargo had been delivered in

San Francisco, and before the cargo was entered for duty, the reduction should inure to the benefit of the purchaser, and be deducted from the contract price.

ID.—CHARTER-PARTY—CONTRACT WITH SHIPOWNER—DUTY NOT INCLUDED.—The charter-party is the contract between the shipper and the shipowner, and, though made part of the contract of sale by reference, the reference of the charter-party to port charges, pilotage, and wharfage dues and charges to be paid as customary, does not include any charges for duty, but refers only to charges against the ship, which the shipowner was to pay. The payment of duty was no concern of the shipowner, but only of the shipper under the contract of sale of the cargo.

ID.—DRAFT AND LETTER—DUTY FOR CARGO NOT SETTLED.—Where a draft was drawn by the shipper for the amount due after deducting amounts for freight and duty as then expected, prior to the knowledge of any reduction, and was accompanied by a letter, that he would leave it to the purchaser to remit any reduction in duty which might occur before the arrival of the ship, such draft cannot be deemed a settlement for the cargo in respect of the duty.

ID.—CONDITION PRECEDENT TO SHIPMENT—BREACH BEFORE SHIPMENT—DISCHARGE OF PURCHASER—LOSS ON SALE BY SHIPPER.—Where by the terms of shipment of a cargo of coal, a specific form of charter-party was to be used by the shipper, as a condition precedent to the shipment, which he refused to use, upon demand of the purchaser, who notified the shipper before shipment that the cargo would not be received under a different charter-party from that contracted for, and that other arrangements would be made, unless notice was immediately received that the agreed charter-party should be used, and such notice was not received until long after the purchaser had made other arrangements for the purchase of other coal to fill his contracts, the purchaser was discharged from the contract by the breach of the shipper, and was not bound to accept the cargo. The shipper could not thereafter sell the same for the purchaser's account and charge him with the difference between the selling price and the contract price.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Edward A. Belcher, Judge.

The facts are stated in the opinion of the court.

E. B. Young, and Gordon & Young, for Appellant.

The rule of law is well established and universally applied that when a custom exists in reference to a particular trade or business the contracts of the parties engaged in that business are presumed to be made with reference to such custom,

unless it is *expressly excluded,* and evidence of such custom is always admissible. (*Mobile etc. Co.* v. *McMillan,* 27 Ala. 77; *Munn* v. *Burch,* 25 Ill. 35; *Oldershaw* v. *Knowles,* 4 Ill. App. 63; *Appleman* v. *Fisher,* 34 Md. 541; *Sanderson* v. *Columbian I. Co.,* 2 Cranch C. C. 218; *Hosteter* v. *Gray,* 11 Fed. 179; *Turner* v. *Yates,* 16 How. 14; *The Queen of the East,* 12 Fed. 165; *Sampson* v. *Gazzam,* 6 Port. 123;[1] *Waring* v. *Grady's Exr.,* 49 Ala. 465;[2] *Halsey* v. *Brown,* 3 Day, 346; *Bragg* v. *Bletz,* 7 D. C. 105; *Wheelwright* v. *Dyal,* 99 Ga. 247; *Doane* v. *Dunham,* 79 Ill. 131; *United States L. I. Co.* v. *Advance Co.,* 80 Ill. 549; *Merchants' M. I. Co.* v. *Wilson,* 2 Md. 217; *Burbridge* v. *Gumbel,* 72 Miss. 371; *Southier* v. *Kellerman,* 18 Mo. 509; *Town of Lebanon* v. *Heath,* 47 N. H. 353; *Esterly* v. *Cole,* 3 N. Y. 502; *Dalton* v. *Daniels,* 2 Hilt. 472; *Walls* v. *Bailey,* 49 N. Y. 464;[3] *Ward* v. *Vosburg,* 31 Fed. 12; *McCurdy* v. *Alaska and Chicago C. Co.,* 102 Ill. App. 120; *Union I. Co.* v. *American F. I. Co.,* 107 Cal. 327.[4]) The respondent was chargeable with notice of the custom of this port as to duty on imported coal, whether he actually knew it or not. (*Hazard's Adm.* v. *New England N. I. Co.,* 8 Pet. 557; *Baxter* v. *Leland,* 1 Blatchf. 526; *Deshler* v. *Beers,* 32 Ill. 368;[5] *Daniels* v. *Hudson River F. Ins. Co.,* 12 Cush. 416;[6] *Wall* v. *Howard Ins. Co.,* 14 Barb. 383; *Hartshorne* v. *Union Marine Ins. Co.,* 36 N. Y. 172; *Norris* v. *Insurance Co.,* 3 Yeates, 84;[7] *Carter* v. *Philadelphia Coal Co.,* 77 Pa. St. 286; *White* v. *Whitney,* 15 Pick. 179; *Lyon* v. *George,* 44 Md. 295.) There was no contract for the Poltalloch cargo, as the minds of the parties did not meet (*Meux* v. *Hogue,* 91 Cal. 442; *Havey* v. *Duffey,* 99 Cal. 401), and the breach of the executory terms of the contract before shipment discharged the proposed purchaser. (*Haskell* v. *McHenry,* 4 Cal. 411; *Dunn* v. *Daly,* 78 Cal. 640; *Textor* v. *Hutchings,* 62 Md. 150.)

Richard C. Harrison, for Respondent.

The contract of sale was unambiguous and not subject to any custom on the question of duty. (*Burns* v. *Sennett,* 99

[1] 30 Am. Dec. 578.
[2] 20 Am. Rep. 286.
[3] 10 Am. Rep. 407.
[4] 48 Am. St. Rep. 140.

[5] 83 Am. Dec. 274.
[6] 59 Am. Dec. 192.
[7] 2 Am. Dec. 360.

Cal. 363; *Scott* v. *Hartley*, 126 Ind. 239; *Silberman* v. *Clark*, 96 N. Y. 522; *St. Nichols Ins. Co.* v. *Mercantile Mutual Ins. Co.*, 5 Bosw. 238; *Holloway* v. *McNear*, 81 Cal. 154; *Milwaukee M. Ins. Co.* v. *Palatine Ins. Co.*, 128 Cal. 71; *Ah Tong* v. *Earl Fruit Co.*, 112 Cal. 679, 681.)    The appellant was not justified in refusing to accept the second cargo. The breach was not substantial, and did not harm the appellant. (Anson on Contracts, 8th ed., p. 364; Clark on Contracts, p. 661; *Emerson* v. *Graff*, 29 Pa. St. 358; *Lassing* v. *James*, 107 Cal. 348, 362; *Ernst* v. *Cummings*, 55 Cal. 179, 183; *Myer* v. *Wheeler*, 65 Iowa, 390, 396; *Weintz* v. *Hafner*, 78 Ill. 27.)

SHAW, J.—Appeal by the defendant from a judgment and from an order denying his motion for a new trial. .

The case involves a contract for the sale of two cargoes of coal by the plaintiff to the defendant. The plaintiff was a merchant doing business in London, England, and the defendant was engaged in the coal business in San Francisco. The contract was made by cable. The defendant in the course of his business as a coal-shipper had adopted a certain form of charter-party for the shipment of coal upon vessels. In June, 1893, he had written a letter to the plaintiff upon the subject of buying coal of him, and had inclosed in the letter one of his forms of charter-party. On October 10, 1893, Moore sent to Withers a cablegram as follows: "Offer subject to immediate reply twenty-four shillings, cost, freight and insurance, exchange, duty paid, two cargoes 2500 tons to 3500 tons, March-April-May loading, August-September-October loading. Our usual form of charter-party." The price was not acceptable, and there were some intervening cablegrams relating thereto, followed by a dispatch on October 12th from the plaintiff to the defendant, as follows: "Ultimatum twenty-four shillings and threepence. Telegraphic confirmation." To which the defendant on the same day replied: "Offer accepted." The form of charter-party referred to, of which the plaintiff had a copy, contained two clauses which are important to the consideration of the case. One was as follows: "All port charges, pilotages, wharfage dues and charges, at ports of loading and discharge, and half cost of weighing at port of discharge to be paid by the ship as customary. Should

vessel be free from wharfage during discharge, the above freight to be reduced by 4½d. per ton. Payment of freight to be made as follows: On right and true delivery of cargo in gold coin at the exchange of $4.80 to the pound sterling." The other clause was as follows: "The vessel to be consigned inwards and outwards to charterers, or their agents, at port of discharge." On the 14th of October defendant wrote a letter to plaintiff in relation to the purchase, from which it appears that the proper interpretation of the dispatches is, that the plaintiff agreed to sell to the defendant two cargoes of coal of from three to four thousand tons each, the first cargo to be shipped during the months of March, April, and May, 1894, and the second during the months of August, September, and October, 1894, at the price of twenty-four shillings and threepence per ton, to be delivered in San Francisco, the plaintiff to pay the cost of freight, insurance, exchange, and duty, the shipment to be made upon the form of charter-party referred to in the dispatch.

In pursuance of this contract the plaintiff loaded and shipped by the vessel Highfields a cargo of 3,541 tons of coal, which reached San Francisco on June 21, 1894. At the time the contract was made, and at the time the vessel reached San Francisco, the duty on coal was seventy-five cents per ton. On July 1, 1894, there was a reduction in the duty to forty cents a ton, making a difference of thirty-five cents per ton in the amount to be paid if the cargo was entered for duty after July 1st. The defendant sold the cargo, in anticipation of its arrival, to the Southern Pacific Company, and, at the request of that company, the same was not entered for duty until after July 1st, thus reducing the duty by the amount of thirty-five cents per ton. The second cargo of coal, amounting to a little over 3,711 tons, was shipped by the vessel Poltalloch, on the 27th of October, 1894. The dispute with regard to the first cargo relates to the right claimed by the defendant to deduct from the price the reduction in the amount of duty. The defendant refused to accept the second cargo on the ground that it was not shipped in compliance with the contract. The plaintiff thereupon sold it for the highest price he could obtain, and brings this action, as to that cargo, to recover the difference between the selling price and the contract price.

1. The defendant claims that at the time of making this contract there was a custom among persons engaged in buying and shipping coal in San Francisco that where coal was bought in a foreign country, and between the time of making the contract and the time of delivery of the coal there was a change in the duty to be paid, such change should operate to the benefit or injury of the purchaser; that is, if the duty was reduced the difference was to be deducted from the purchase price, but if the duty was increased, the buyer would be obliged to pay the increase. Evidence was introduced to show that such a custom existed. It was taken over objection, subject to motion to strike out, and afterwards, upon motion of plaintiff, it was stricken out. The contention of the defendant is,—1. That the contract by its terms showed it was made subject to this custom; and 2. That even if it is not shown on the face of the contract, nevertheless, as it was a purchase for delivery at San Francisco, it must be deemed to have been made with reference to the customs of that place.

There is nothing in the contract which shows upon its face that it was made subject to the custom referred to. The charter-party, which, by reason of reference to it, may be considered as part of the contract, refers to port charges, pilotages, and wharfage dues, and charges to be paid for the ship as customary. It is clear that this does not include any charges for duty. The charter-party was a contract made by the seller of the coal with the shipowner who was to carry it, and the terms contained therein must be construed with reference to the object of the contract. These charges, therefore, refer solely to charges against the ship which the shipowner was to pay. The payment of duty was no concern of the shipowner. The charter-party also contains a statement that the cargo is "to be discharged as customary, in such customary berth or place as consignee shall direct." This has no reference whatever to the payment of duty, and cannot justly be construed as intended to be a contract to observe any of the customs that may have existed in San Francisco with relation to the effect of a change in the amount of duty. It refers to the manner of unloading. The contract as made by the cablegrams and explained in the letter is not uncertain with respect to the point in question. It is a positive agreement by the defendant

to buy the coal in question of the plaintiff at the price of twenty-four shillings and threepence per ton, to be delivered to him free of any expense of freight, insurance, exchange, or duty, all of which were to be paid by the plaintiff. To attach to this contract a custom of San Francisco, the effect of which would be that if the cargo was not received until after July 1, 1894, the defendant would pay thirty-five cents less per ton than the price agreed upon, would be to vary the terms of a written contract by parol evidence. The code provides that evidence may be given of "usage, to explain the true character of an act, contract, or instrument, where such true character is not otherwise plain; but usage is never admissible, except as an instrument of interpretation." (Code Civ. Proc., sec. 1870, subd. 12.) And in accordance with this principle it has been held that it is not competent to vary a written contract by parol proof of a custom where the contract is certain in its terms. (*Holloway* v. *McNear*, 81 Cal. 156; *Milwaukee Co.* v. *Palatine Co.*, 128 Cal. 74; *Ah Tong* v. *Earl Fruit Co.*, 112 Cal. 681; *Burns* v. *Sennett*, 99 Cal. 363.) It is clear, therefore, that evidence of such custom could not be given to relieve the defendant from the payment of the full amount of the price of the first cargo of coal. The findings and judgment with reference to that cargo are therefore correct, and are sustained by the evidence.

2. The defendant refused to accept the second cargo of coal because the plaintiff in making the shipment did not use the form of charter-party specified in the contract. The following part of the clause first above quoted was omitted: "Should vessel be free from wharfage during discharge, the above freight to be reduced by 4½d. per ton,"—and there was also omitted the provision that the vessel was to be consigned outwards to the charterers or their agents. Both vessels were shipped upon the same form of charter-party. The vessels were shipped from Newcastle, in New South Wales. According to the method of doing business, as soon as the vessel was chartered, Withers transmitted to Moore a copy of the charter-party. That for the Highfields was received by Moore in the early part of May, 1894. He immediately objected to the omission of the clauses above mentioned, claiming that he had resold the cargoes, that the vessel would

secure free wharfage, and that in consequence he would be entitled to the reduction of 4½ pence per ton on the price of the coal, and also complaining because the charter-party did not give the consignee the outward business of the ship. The vessel was consigned, not to Moore, but to Withers himself, and by the letters he constituted Moore his agent to receive the cargo and apply it to the fulfillment of the contract. A very sharp dispute arose over this variation from the contract, and it was finally settled by an agreement on the part of the plaintiff to reduce the price by the amount of the deduction on account of free wharfage. The court finds that this agreement was made and intended by the parties to apply not only to the Highfields cargo, but also to the second cargo shipped. There is, however, no evidence to that effect. The entire negotiation was conducted by letters and telegrams. In his letter of June 22d, with relation to this dispute, the defendant stated: "Regarding the vessel for the other cargo, we would prefer to have matters settled re the first cargo, before speaking about the second," and the entire negotiation shows that the reduction related solely to the price for the first cargo, and did not include the second. In the course of this negotiation the defendant expressly informed the plaintiff that he would not accept the second cargo unless it was shipped upon the charter-party referred to in the original contract. Notwithstanding repeated notices to this effect, the plaintiff, in August, 1894, chartered the Poltalloch to carry the second cargo, using the same form of charter-party as that upon which he had shipped the first one. He transmitted the same to the defendant, who received it early in September, and immediately wrote that unless some arrangement was made about it he would not accept the cargo. Some bitter correspondence ensued, the plaintiff insisting that it was no business of the defendant whether there was a reduction in freight or not, and the defendant insisting that he must have the charter-party as agreed upon in the contract. All this occurred while the vessel was being loaded at Newcastle. Finally, on September 20th, the defendant cabled to plaintiff that unless he had the wharfage clause and the inward and outward consignment inserted in the charter-party, he would make other arrangements, meaning that he would refuse the

cargo and buy other coal, and that he must have a definite
answer by the following day. No answer was received until
September 27th, when the plaintiff by cable accepted the
proposition. The defendant had resold the cargo to arrive,
and between the 20th and 27th of September, not having re-
ceived any answer to his telegram of September 20th, he
purchased another cargo of coal to fill his contract, and on
September 28th he replied to the last cablegram of plaintiff,
stating that it was too late, that he had made other arrange-
ments. It will be observed that the cargo was not shipped
at that date, the vessel not departing from Newcastle until
October 27th following.

Under these circumstances the defendant was not bound
to accept the last cargo. The shipment of the cargo upon
the charter-party which had been adopted by the defendant
was one of the conditions precedent to be performed by the
plaintiff. He not only neglected, but persistently and pur-
posely refused, to perform it, insisting that he was not bound
by that part of the contract, and that he was to be the judge
whether or not the defendant would be prejudiced by the
variation between the charter-party which he employed and
that which he agreed to employ. In cases of this sort, where
the stipulation is a condition precedent, the non-performance
by the party who is obliged to perform it discharges the other
party from his contract. There are many decisions with re-
lation to this question. Manifestly the law would be different
according as the circumstances may be different. In many
cases the contract was partly executed, and the stipulation,
instead of being a condition precedent, was either an inde-
pendent covenant, the breach of which could be compensated
in damages, or it was so unimportant or immaterial that, as
the contract had been performed in part, the courts would
not allow a rescission on account of it. *Fountain* v. *Semi-
Tropic L. and W. Co.,* 99 Cal. 677, is an illustration of this
class of cases. That was a contract for the purchase of land
which the defendant had sold under an agreement to supply
water for irrigation. Necessarily the water had to be sup-
plied after the possession was taken by the plaintiff. The
defendants failed to supply the water, and the plaintiffs,
treating the contract as rescinded, brought an action to re-

cover moneys expended upon the land in expectation of receiving the water. With reference to such a case the court incidentally say: "If the covenant be of minor importance, not going to the root of the matter, and one that can be readily compensated in damages, the party injured cannot rescind, but must perform his part of the contract and seek compensation in damages." The point was not necessary to a consideration of the case, and it is not decided whether or not the stipulation in that case did go to the root of the matter. But there, although the agreement was in one sense executory, yet, with regard to possession of the land, it was not executory. Possession had been given by the defendant and taken by the plaintiff, and performance of the contract was begun by both of the parties. These cases do not apply to the question before us. The principle has no application to contracts which are executory and upon conditions which are expressly made conditions precedent. It has been said with reference to such cases: "The difficulty which has always arisen, and must needs continue to arise with regard to conditions precedent, consists in discovering whether or no the parties to a contract regarded the particular term as essential. If they did, the term is a condition; its failure discharges the contract." (Anson on Contracts, p. 399.) In *Beitini* v. *Gye*, 1 Q. B. D. 187, Blackburn, J., said: "Parties may think some matter, apparently of very little importance, essential; and if they sufficiently express an intention to make the literal fulfillment of such a thing a condition precedent, it will be one." The defendant was not bound to accept anything he had not contracted for, nor under conditions different from those he agreed to. The fact that we could not now see that he would be seriously prejudiced by the adoption of a different charter-party from that which had been agreed to, if we were disposed to enter on such an inquiry, is a fact which cannot control the decision in the case. The court cannot make a contract for the parties. (7 Am. & Eng. Ency. of Law, p. 118.) The plaintiff was fully informed that he must comply with the contract if he expected to enforce it, and in the face of this knowledge he deliberately refused to comply with it, claiming that such refusal was immaterial to the defendant. If the contract had been in course of per-

formance, perhaps compensation might have been allowed and the contract carried out so far as possible, but where the objection was made before the cargo was shipped and before the ship was chartered, and plaintiff had full notice that it would not be accepted, he cannot be allowed to say that the defendant would not be damaged by his breach of the contract. Having broken the contract himself, he thereby discharged the other party. It follows from these conclusions that the court erred in giving judgment in favor of the plaintiff for the difference between the contract price of the second cargo and the price obtained by the plaintiff upon his sale.

3. The appellant contends that there was a settlement for the first cargo; that a draft was drawn upon him for the amount due from him to the plaintiff after deducting the amounts which the defendant was expected to pay for freight and duty; that this was drawn as a settlement of the amount due for this cargo, and that it was paid. This, however, is not borne out by the evidence. The draft was drawn long before the first of July, and at a time when the plaintiff did not know whether the cargo would be discharged before or after that time. By letter, written about the same time, the plaintiff advised the defendant that he would have the draft drawn for a certain amount, leaving the defendant to remit to the plaintiff any reduction in the duty, if such reduction should take place before the arrival of the ship. Under these circumstances it cannot be claimed that the draft was a settlement of the account for that cargo.

The judgment and order are reversed and the cause remanded.

Van Dyke, J., Angellotti, J., Lorigan, J., and Henshaw, J., concurred.

Rehearing denied.