[Civ. No. 279. Third Appellate District.—December 3, 1906.]

## F. N. FISH, Appellant, v. GEORGE CORRELL and A. CORRELL, Respondents.

NONSUIT—ACTION UPON WRITTEN CONTRACT FOR TOMBSTONE—CUSTOM—INTENTIONAL BREACH—UNREASONABLE DELAY.—In an action upon an express written contract, unambiguous in its terms, to erect a tombstone or sarcophagus all of Scotch granite, with bases of fixed dimensions, to be erected in a specified month, or within a reasonable time thereafter, no custom to build a foundation of different granite is admissible to vary its terms; and where the contract was intentionally broken, and there was unreasonable delay in its performance on any theory of the case, a nonsuit was properly granted.

ID.—QUANTUM MERUIT.—The plaintiff cannot recover the contract price upon a *quantum meruit*, where he intentionally refused to perform it, and violated its terms, both as to material and as to reasonable time for performance of the contract.

APPEAL from a judgment of the Superior Court of Sutter County. K. S. Mahon, Judge.

The facts are stated in the opinion of the court.

W. H. Carlin, and L. T. Hatfield, for Appellant.

The testimony was admissible to explain the technical terms used in the contract. (*Myers* v. *Tibbals,* 72 Cal. 278, 13 Pac. 695; *Berry* v. *Kowalsky,* 95 Cal. 134, 29 Am. St. Rep. 101, 30 Pac. 202; Civ. Code, sec. 1645.) Under all the circumstances shown in the transcript the work was done within a reasonable time.

Lawrence Schillig, for Respondents.

The contract is unambiguous, and the imperative rule is to follow its language, without variation from evidence. (*Hawley* v. *Brumagim,* 33 Cal. 394; *San Diego Flume Co.* v. *Chase* (Cal.), 32 Pac. 245; *Harrison* v. *McCormick,* 89 Cal. 327, 23 Am. St. Rep. 469, 26 Pac. 830; *Burns* v. *Sennett,* 99 Cal. 371, 33 Pac. 916; *Gardiner* v. *McDonogh,* 147 Cal. 318, 81 Pac. 964.) Difficulty in performing an undertaking will not avail a party who has committed a breach of the contract. (*Wilson* v. *Alcatraz Asphalt Co.,* 142 Cal. 182, 188, 75 Pac. 787.)

McLAUGHLIN, J.—The complaint in this case contains two causes of action. In the first the appellant alleged the full performance of a contract entered into between the parties hereto on June 2, 1903, by the terms of which appellant agreed, during the month of June, 1903, or within a reasonable time thereafter, to construct and cause to be erected a Scotch granite sarcophagus or tombstone, with foundation upon or near the grave of Dominick Correll at or near Crafton, Yolo county, for the sum of four hundred and fifty dollars, which sum was to be paid to appellant by respondents upon the completion of the work. In the second cause of action it was alleged that respondents were indebted to appellant in said sum for the reasonable value of work, labor, services and material rendered and furnished at the request of respondents in the construction and erection of a "Scotch granite sarcophagus," with foundation at or near said grave. The respondents, in their answer, denied the averments of the complaint and set up affirmative defenses which have no bearing on the questions to be decided by this court. Upon the trial, after appellant had rested his case, the court granted a motion for a nonsuit, and this appeal is from the judgment

thereupon entered, in favor of respondents. The bill of exceptions contains the evidence and many specifications of errors of law aimed at rulings of the court in the admission of evidence and in granting the motion for a nonsuit. The last-mentioned specification presents the principal point in the case, which will be first considered.

A motion for a nonsuit "admits the truth of plaintiff's evidence, and every inference of fact that can be legitimately drawn therefrom, and upon such motion the evidence should be interpreted most strongly against defendants." (*Hanley* v. *California etc. Co.*, 127 Cal. 237, [59 Pac. 577].) It is, therefore, apparent that if there was *any* evidence which would support findings justifying a judgment for appellant, the nonsuit should not have been granted, and hence our inquiry upon this branch of the case invokes a careful analysis of the evidence introduced by appellant, an epitomized statement of which is essential to the proper understanding of points decided.

The contract between the parties was executed in duplicate, and we can discover no ambiguity in its terms. The appellant therein agreed to erect a Scotch granite sarcophagus, composed of bottom base, second base, die and cap, on a foundation to be furnished by him, during the month of June, 1903, or in a reasonable time thereafter, and the respondents agreed to pay him four hundred and fifty dollars when the same was delivered and set up. The contract was dated June 2, 1902, and on July 12, 1903, the cap, die and second base of Scotch granite arrived in Woodland. One Mitchell, who was attending to the matter for appellant, notified the latter of its arrival and appellant came to Woodland a few days later. Mitchell had the bottom base of *Rocklin* granite ready, but it proved to be too small, and another was ordered from Rocklin, which was not delivered until October, 1903, about which time some gravel for the foundation was hauled to the cemetery. Between October, 1903, and May, 1904, the ground in and about the cemetery was softened by rain to such an extent that the monument could not be hauled to the cemetery. It reached there on May 2, 1904, and at that time Mitchell found that a foundation had been built upon the grave of Dominick Correll by one Douglass, without the knowledge, consent or direction of himself or Fish. He had some words with Douglass, who had used a portion of the gravel hauled there in

October, and announced his intention to place the tombstone on the foundation so constructed, the cement in which was still fresh and wet. Douglass left the cemetery · saying that he would see the Corrells about it, and on the following day, notwithstanding the protest of a man named Snowball, who said he was a trustee of the cemetery, the stone consisting of a lower base of Rocklin granite, and a second base, die and cap of Scotch granite was erected on the foundation constructed by Douglass. From the time the contract was executed in June, 1902, until the erection of the monument was completed, no communication, oral or written, passed between the parties. The contract was not altered or modified, and no explanation of the delay in erecting the monument was demanded or made. The testimony shows without conflict that the lower base was, as indicated in the contract, a part of the sarcophagus, and the only reason given for using a lower base of Rocklin, instead of Scotch, granite, was that it was customary to use a base of native granite in the erection of all such monuments.

The foregoing summary of the evidence must inevitably lead an impartial mind to the conclusion that the nonsuit was properly granted. The contract, designated as such on its very face, provided for the erection of a *Scotch* granite sarcophagus and both bases were specifically mentioned and their dimensions given. The lower base was placed in the same category with the second base, cap and die, and no person reading the contract could fail to reach the conclusion that each and every part of the sarcophagus was to be made of Scotch granite. Under the express terms of the contract the appellant had no more right to substitute a lower base of Rocklin granite than he had to furnish a second base, or cap, or die of the same material. It is argued that the custom testified to by appellant and Mitchell justified the course pursued, but the answer to this is that "a usage cannot be given in evidence to relieve a party from his express stipulation, or to vary a contract certain in its terms." (*Burns* v. *Sennett,* 99 Cal. 371, [33 Pac. 916]; *Withers* v. *Moore,* 140 Cal. 597, [74 Pac. 159].) The gate to a limitless field for the exercise of chicanery and deceit would be opened if parties were permitted to nullify a contract by evidence of a custom at variance with its terms. It is said, however, that when a contract is ambiguous, evidence of a custom may be intro-

ₐduced as an aid to the proper interpretation of the terms of
the contract. This salutary rule has never been questioned
in this state, but it has no application to the case before us.
The only ambiguity suggested involves the meaning of the
term "sarcophagus," and this to us seems entirely imma-
terial. The parties to the contract definitely agreed that,
in this particular instance, the sarcophagus would consist of
a lower base, second base, cap and die of given dimensions,
and this made evidence as to the general ordinary meaning
of the word unnecessary and immaterial. Had the contract
provided for the erection of a sarcophagus, without further
data, such inquiry might have been proper, but the appel-
lant having agreed to erect a sarcophagus consisting of cer-
tain parts and stated dimensions, made of Scotch granite, he
was bound to prove the performance of such agreement, and,
having failed to do so, he cannot recover.

There is another reason for holding that the nonsuit was
properly granted. The appellant agreed to erect the sarcoph-
agus in the month of June, 1903, or within a reasonable time
thereafter. The second base, cap and die arrived from Scot-
land in July, 1903, and the evidence makes it very clear that if
the lower base had been of proper dimensions and material,
nothing would have stood in the way of the immediate erec-
tion of the monument. There can be no doubt that if the
lower base had been included in the order sent to Scotland it
would have arrived with the other parts of the tombstone. It
is equally clear that appellant never intended to supply a
lower base of Scotch granite, and hence the delay was caused
by his willful disregard of the terms of his contract. That
contract has never been performed, and undisputed evidence
in this record conclusively shows that appellant never en-
deavored or intended to fulfill his agreement with respond-
ents. He never made an effort to secure a lower base of
Scotch granite. On the contrary, he is here asserting a right
to furnish a base of native stone. Under our construction
of the contract, his conduct was inexcusable and delay result-
ing therefrom was unreasonable.

But even if we accept his theory of the case and assume
that he had a right to substitute a lower base of Rocklin
granite, the delay in erecting the monument stands unex-
cused. The only reason advanced as an excuse for such de-
lay is that a mistake was made in the size of the lower base

which was ready when the cap, die and second base arrived from Scotland. The dimensions of the lower base were given in the contract, and by the exercise of ordinary diligence and care, a base of proper size might have been procured as easily as the one which was discarded.

The appellant seeks to make his own unexplained mistake a shield against consequences which ordinarily fall upon those who are negligent, but if this was allowed a premium would be placed upon carelessness, and all would be invited to commit errors that they might excuse delay. But for this mistake, which seems inexcusable in view of the dimensions given in the contract, the tombstone might, confessedly, have been in place within a few days after the stone arrived from Scotland, and under these circumstances we think the delay was unreasonable and inexcusable.

The appellant could not recover on his second cause of action. He had entered into an express contract to erect a Scotch granite sarcophagus, consisting of two bases, a cap and die. He did not perform such contract, and it would be promulgating an unjust and dangerous doctrine to say that he could deliberately ignore and violate his agreement by substituting a lower base of native granite and then recover the full contract price by way of *quantum meruit*. Without consulting or notifying the respondents when he found that others were building a foundation, he hastily placed an inferior tombstone on the foundation which he did not erect, and if he has suffered detriment through early dilatoriness and subsequent but tardy haste, he can blame himself alone.

The evidence excluded and stricken out on motion was objectionable, because, as above indicated, it was an attempt to vary the terms of a written contract by parol. It was not error to exclude appellant's definition of the term "sarcophagus." The contract itself definitely described the tombstone so designated, and, besides, a similar question had already been answered by the witness.

The judgment is affirmed.

Chipman, P. J., and Buckles, J., concurred.