[L. A. No. 17857. In Bank. Feb. 17, 1942.]

JOSEPH N. ERMOLIEFF, Respondent, v. R. K. O. RADIO PICTURES, INC. (a Corporation), Appellant.

Mitchell, Silberberg, Roth & Knupp and Guy Knupp for Appellant.

Joseph L. Fainer, L. A. Bloom and Thomas Connell for Respondent.

CARTER, J.—Plaintiff and defendant are producers and distributors in the motion picture industry. Plaintiff was the owner and producer of a foreign language motion picture entitled "Michael Strogoff," based on a novel by Jules Verne, which prior to July 6, 1936, he had produced in the German and French languages. On that date the parties entered into a contract in which plaintiff granted to defendant the exclusive right to produce and distribute an English version of that picture in only those "countries or territories of the world" listed on an exhibit annexed to the contract. On the exhibit is listed among other places "The United Kingdom." Plaintiff reserved the rights in the picture in both foreign and English language in all countries or territories not listed in the exhibit. The contract was modified in December, 1936, and September, 1937, to add other countries or territories to the list. Plaintiff commenced the instant action on May 8, 1940, pleading the contract and its modifications and alleging that defendant had produced an English version of the

picture under the title "Soldier and a Lady" in the United States and elsewhere; and that a controversy has arisen between the parties as to the countries and territories granted to defendant and those reserved by plaintiff under the contract and its modifications. Those allegations were admitted by defendant and it alleges that the only controversy between the parties is with respect to the area referred to as "The United Kingdom"; that the only dispute is whether "The United Kingdom," in which the contract grants rights to defendant, includes Eire or the Irish Free State; and that there is a custom and usage in the motion picture industry that that term does include Eire and that such usage is a part of the contract. Both the complaint and the answer pray for declaratory relief, namely, a declaration of their rights with respect to those areas embraced in the contract which are in dispute.

It was stipulated that the sole issue with respect to the territory embraced in the contract was whether defendant or plaintiff held the rights in the picture in Eire, which in turn depended upon whether The United Kingdom included Eire; that defendant did distribute the picture in Eire, and that The United Kingdom, from a political and legal viewpoint, did not include Eire, the latter being independent from it.

At the close of plaintiff's case the trial court denied defendant's motion to dismiss made on the ground that the case was not a proper one for declaratory relief under sections 1060-1062a of the Code of Civil Procedure. It granted a motion to strike all of defendant's evidence that by the custom and usage of the motion picture industry The United Kingdom included Eire on the ground that such evidence was incompetent, irrelevant, and immaterial, and entered judgment in favor of plaintiff determining that he, rather than defendant, possessed the rights with respect to the picture in Eire. From that judgment defendant appeals, claiming error in the above-mentioned rulings of the trial court.

Defendant takes the position, with relation to the propriety of declaratory relief under the circumstances, that because it was stipulated that it had distributed the picture in Eire, an action for damages had arisen for that breach of the contract, if such it was, and therefore declaratory relief was not available.

Section 1060 of the Code of Civil Procedure provides in part:

"Any person interested under a . . . contract . . . may, in cases of actual controversy relating to the legal rights . . . of the respective parties, bring an action . . . for a declaration of his rights and duties in the premises, including a determination of any question of construction or validity arising under such instrument or contract. He *may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of such rights or duties, whether or not further relief is or could be claimed at the time.* The declaration may be either affirmative or negative in form and effect, and such declaration shall have the force of a final judgment. Such declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought." (Emphasis added.)

Section 1062 of the Code of Civil Procedure provides:

"The remedies provided by this chapter are cumulative, and shall not be construed as restricting any remedy, provisional or otherwise, provided by law for the benefit of any party to such action, and no judgment under this chapter shall preclude any party from obtaining additional relief based upon the same facts."

It is clear from the above provision stating that declaratory relief may be asked for alone or with other relief, that the court may make a binding declaration of rights whether or not other relief *is or could be* claimed at the time, and that the remedy is cumulative, that the mere fact that the contract has already been breached and a cause of action therefor (one of the traditional remedies) has accrued, does not necessarily deprive the court of the power to grant declaratory relief under the law. Neither the fact that a party has another remedy nor that a breach has occurred prior to the commencement of his action compels the court to deny relief. Ordinarily, the alternative remedy, such as damages, injunctive relief and the like would be more harsh, and if he chooses the milder remedy, declaratory relief, the court is not required for that reason to compel him to seek a more stringent one. It is said in *Tolle* v. *Struve*, 124 Cal. App. 263, 267 [12 Pac. (2d) 61]:

"Appellant asserts further that if her attempt to terminate her obligations under the leases constituted a breach of legal duty it was one which gave rise to a cause of action for remedial relief against her and that being so, there was no longer any room or occasion for the invocation of the statute

authorizing declaratory relief. The statute itself seems to afford a complete answer, providing as it does (Code Civ. Proc., sec. 1060): 'He [the plaintiff] may ask for a declaration of rights or duties, either alone or *with other relief* . . .' (Italics ours.) We can conceive of no meaning to be attributed to the italicized language unless the statute contemplates the giving of declaratory relief as well after a breach of legal duty as before. This conclusion is strengthened by the additional language of the section that 'the court may make a binding declaration of such rights or duties, whether or not further relief is or could be claimed at the time.' The concluding sentence of the section further bears this out: 'Such declaration *may* be had before there has been any breach of the obligation in respect to which said declaration is sought.' (Italics ours.) The use of the word 'may' is permissive, not mandatory. It serves to make clear what the legislature feared might otherwise be obscure in view of the fact that historically nearly all relief by way of judgment in common-law courts had been limited to redress for completed wrongs, that this statute contemplated declaratory relief regardless of whether there had been an actual breach of obligation or not. It does not limit the right to such relief to cases where no breach has in fact occurred." (See, also, *Hamilton Corp.* v. *Corum,* 218 Cal. 92 [21 Pac. (2d) 413]; *Wollenberg* v. *Tonningsen,* 8 Cal. App. (2d) 722 [48 Pac. (2d) 738]; Borchard, Declaratory Judgments (2d ed.), pages 315-390.) Defendant relies upon *Standard Brands of California* v. *Bryce,* 1 Cal. (2d) 718 [37 Pac. (2d) 446], and *Fritz* v. *Superior Court,* 18 Cal. App. (2d) 232 [63 Pac. (2d) 872], as stating a contrary rule. In the Bryce case the court was concerned with the true nature of an action which involved the injury to real property, a tort, in considering the proper place of trial of the action. When making such determination the true nature of the action is involved rather than what the parties may designate it. The court merely held that the action was not one for declaratory relief and that the law on venue could not be thwarted in that manner. In the instant case the interpretation of the rights and duties under the contract is clearly a case for declaratory relief. The same comment is applicable to the Fritz case, and furthermore in that case the court held that there was no actual controversy, that the facts as pleaded rather than establishing an action within the purview of section 1060, compre-

hended an action founded upon special statutory authority (Civil Code, sec. 315) and that there was no compliance with the requirements of that statute. It may well be that by reason of the discretion vested in the trial court in the granting of declaratory relief (Code of Civil Procedure, sec. 1061) the court may under proper circumstances deny that relief where other remedies will serve as well or better. (See *Orloff* v. *Metropolitan Trust Co.*, 17 Cal. (2d) 484 [110 Pac. (2d) 396]; *Stenzel* v. *Kronick*, 102 Cal. App. 507 [283 Pac. 93]; *Welfare Investment Co.* v. *Stowell*, 132 Cal. App. 275 [22 Pac. (2d) 529]; *A. Hamburger & Sons, Inc.* v. *Kice*, 129 Cal. App. 68 [18 Pac. (2d) 115].)

In the instant case plaintiff in his complaint claimed a controversy with respect to the respective rights of the parties under the contract. Defendant in its answer set forth with particularity the controversy as being whether The United Kingdom included Eire. It was stipulated that that was the sole controversy and the case was tried on that issue. The court denied defendant's claim that the case was not within the purview of section 1060 and granted declaratory relief. While it is true that defendant has already distributed pictures in Eire, it is also true that if plaintiff is correct in his assertion that Eire is not included in The United Kingdom, he has reserved the right in the contract to distribute pictures there. If defendant is correct it has the right to make a further distribution of pictures in Eire. Defendant's contention must therefore fail.

Defendant asserts, however, that the judgment must be reversed because of the granting of plaintiff's motion to strike defendant's evidence that according to the custom and usage of the moving picture industry Eire is included in The United Kingdom. With that contention we agree. Both plaintiff and defendant are engaged in the business of producing and distributing moving pictures and rights in connection therewith. Defendant's evidence consisted of the testimony of several witnesses familiar with the distribution of motion pictures to the effect that in contracts covering the rights to produce pictures the general custom and usage was that the term "The United Kingdom" included Eire, the Irish Free State. Plaintiff's motion to strike out all of that evidence on the ground that it was incompetent, irrelevant and immaterial was granted. Plaintiff, reserving his objection to

defendant's evidence, offered contrary evidence concerning such custom and usage.

The correct rule with reference to the admissibility of evidence as to trade usage under the circumstances here presented is that while words in a contract are ordinarily to be construed according to their plain, ordinary, popular or legal meaning, as the case may be, yet if in reference to the subject matter of the contract, particular expressions have by trade usage acquired a different meaning, and both parties are engaged in that trade, the parties to the contract are deemed to have used them according to their different and peculiar sense as shown by such trade usage. Parol evidence is admissible to establish the trade usage, and that is true even though the words are in their ordinary or legal meaning entirely unambiguous, inasmuch as by reason of the usage the words are used by the parties in a different sense. (See Code of Civil Procedure, sec. 1861; Civil Code, secs. 1644, 1646, 1655; *Jenny Lind Co.* v. *Bower & Co.*, 11 Cal. 194; *Callahan* v. *Stanley*, 57 Cal. 476; *Higgins* v. *California Petroleum etc. Co.*, 120 Cal. 629 [52 Pac. 1080]; *Caro* v. *Mattei*, 39 Cal. App. 253 [178 Pac. 537]; Wigmore on Evidence, vol. IX, sec. 2463, p. 204; Restatement, Contracts, secs. 246, 248; 89 A. L. R. 1228.) The basis of this rule is that to accomplish a purpose of paramount importance in interpretation of documents, namely, to ascertain the true intent of the parties, it may well be said that the usage evidence does not alter the contract of the parties, but on the contrary gives the effect to the words there used as intended by the parties. The usage becomes a part of the contract in aid of its correct interpretation.

Plaintiff relies upon such cases as *Brant* v. *California Dairies, Inc.*, 4 Cal. (2d) 128 [48 Pac. (2d) 13], and *Wells* v. *Union Oil Co.*, 25 Cal. App. (2d) 165 [76 Pac. (2d) 696], as announcing a rule contrary to the one above stated. However, in those cases evidence of custom or usage was not offered, and no contention was made therein that the words employed in the contracts there involved had any other than their ordinary, popular or legal meaning in reference to the subject matter of said contracts. That is not the case here. Plaintiff also cites other authorities. In *New York Cent. R. R. Co.* v. *Frank H. Buck Co.*, 2 Cal. (2d) 384 [41 Pac. (2d) 547], and the cases therein cited, the rule stated is merely that where the terms of the contract are expressly and directly contrary to the precise subject matter embraced in the custom or usage,

parol evidence of that custom or usage is not admissible. The provision in the contract was tantamount to a clause that custom or usage shall not be a part of the contract. They did not involve a situation where the evidence was introduced to define a term in the contract. In the case at bar it cannot be said that there was a provision of that character. The contract stated that the defendant's rights existed only in the countries or territories listed in the annexed exhibit and plaintiff reserved the rights in all other countries or territories. "Territories" is a more comprehensive term than countries, and may well include more than one political entity or nation. The term "The United Kingdom" as a territory or area, does not necessarily limit that area to a political entity known as The United Kingdom. The fact that it is expressly stipulated in the contract that defendant has no rights in any countries not named in the exhibit, does not alter the situation. It falls short of being tantamount to an express and direct agreement that Eire shall not be considered as included in The United Kingdom. The door is still open to evidence of custom and usage with reference to the scope of The United Kingdom. The foregoing comments are equally applicable to the other cases cited by plaintiff, namely, *Withers* v. *Moore,* 140 Cal. 591 [74 Pac. 159] ; *May* v. *American Trust Co.,* 135 Cal. App. 385 [27 Pac. (2d) 101] ; *Brandenstein* v. *Jackling,* 99 Cal. App. 438 [278 Pac. 880] ; *Fish* v. *Correll,* 4 Cal. App. 521 [88 Pac. 489], and *California Jewelry Co.* v. *Provident Loan Assn.,* 6 Cal. App. (2d) 506 [45 Pac. (2d) 271].

 Plaintiff urges that since judicial notice may be taken and it was stipulated that Eire is independent of The United Kingdom and not a part thereof, the custom and usage evidence is not admissible to contradict that stipulation or notice. That notice and stipulation add nothing material to the situation. In any case where a word in a contract had an unquestioned common meaning there could be no dispute as to that common meaning, but the custom and usage is evidence of the peculiar sense in which it was used. The stipulation would add nothing that was not already plain on the face of the contract.

 It is contended that the parties placed a practical construction on the contract which negatived presence of custom and usage as a part thereof. The contract was modified on December 1, 1936, and September 8, 1937, to include countries

not mentioned in the original contract. Eire was not among the added areas and nothing was said therein with reference to the territory embraced by The United Kingdom. Malta and Gibraltar which are political subdivisions of The United Kingdom were added. It does not necessarily follow that these modifications constituted a construction of the contract by the parties to the effect that Eire was not included in the term "The United Kingdom," nor that evidence of custom or usage was removed from the picture. Indeed, it may reasonably follow from those modifications that the criterion to be used in construing the area embraced within The United Kingdom was not the political or legal boundaries thereof. It may well be said to indicate an uncertainty as to the extent of the area embraced by that term because upon plaintiff's present reasoning The United Kingdom is circumscribed by the political and legal boundaries thereof. That being the case, there would be no occasion for the modification because Malta and Gibraltar being political subdivisions of The United Kingdom would be embraced in the contract as originally written. For those reasons, it is also a fair inference to conclude, that the parties because of the modifications, had some meaning in their mind for the term "The United Kingdom," other than that territory which is a political and legal part thereof.

▆ Finally, plaintiff asserts that the custom and usage evidence was inadmissible because a custom and usage to be available must be known by the parties or so generally known that knowledge must be presumed, citing *Security Commercial & Savings Bank of San Diego* v. *Southern Trust & Commerce Bank,* 74 Cal. App. 734 [241 Pac. 945]. But in this case defendant's excluded evidence showed that the custom was general in the moving picture industry and both parties were engaged in the production of motion pictures. As plaintiff expresses it in his brief, "Respondent (plaintiff) is a world famous producer." It is stated in Restatement, Contracts, section 248, page 352:

"Where both parties to a transaction are engaged in the same occupation, or belong to the same group of persons, the usages of that occupation or group are operative, unless one of the parties knows or has reason to know that the other party has an inconsistent intention."

▆ Plaintiff further urges in support of the exclusion of the evidence of usage; that the witnesses were biased, that it was a "low quality of proof," that it was insufficient and the

like. These are matters that go to the weight of the evidence, rather than to its admissibility. With that we are not concerned. There is no necessity for a detailed analysis of the evidence. It is clear that the trial court did not purport to weigh or evaluate that evidence. It disregarded it in toto as is evinced by its order striking it out. On retrial of the action, if the parties so desire, the trial court may consider and give such weight to such evidence as may be introduced.

The judgment is reversed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Houser, J., and Traynor, J., concurred.