[Civ. No. 19242. First Dist., Div. One. Mar. 22, 1962.]

MATTHEW WEBER, Plaintiff and Appellant, v. MILPITAS COUNTY WATER DISTRICT, Defendant and Appellant.

John P. Whitney for Plaintiff and Appellant.

Jones, Griswold & Henley and Bruce P. Griswold for Defendant and Appellant.

TOBRINER, J.—The specific provision of a contract requiring the contractor to obtain "all necessary permits" must prevail over the conjectural theories of the contractor that the custom of the industry, an "implied condition" of the contract, or an estoppel, casts the duty upon the district of procuring an encroachment permit for the performance of pipe installation work on the highway. Neither can we find any statutory provision that imposes this responsibility upon the district. We are, therefore, constrained to hold that the trial

court erred in positing damages against the district because of the lateness of the issuance of the permit, particularly when the contractor did not show that the charged negligence of the district delayed the issuance of the permit or, indeed, that the contractor himself could have obtained it sooner. We are likewise unable to find any basis for damages against the district because of faulty design of the water system.

As we have stated above, the first issue of the case involved the provisions of the contract and the actions of the parties with respect to the procurement of a so-called encroachment permit. On October 13, 1953, Matthew Weber, a general contractor (hereinafter referred to as ''the contractor''), entered into an agreement with Mark Thomas & Co., district engineers for the Milpitas County Water District (hereinafter referred to as ''the district''), to install a system for the distribution of water in Milpitas County Water District. The contract required the contractor to commence the work within 10 days and complete performance within 120 days of the formation of the contract. Since the major portion of the work involved laying pipe along State Highway 17, the job could not be performed unless an encroachment permit were procured pursuant to the Streets and Highways Code.

The specifications annexed to the contract provided, ''The *Contractor* shall, at his expense, *obtain all necessary permits* and licenses for the construction of the project, give all necessary notices, pay all fees required by law, and comply with all laws, ordinances, rules and regulations relating to the work and to the preservation of the public health and safety.'' (Emphasis added.) Nevertheless, the contractor did not at any time apply for such an encroachment permit. The water district did apply for the permit on July 27, 1953, nearly three months prior to the formation of the contract. The Division of Highways, however, issued the permit to the water district (c/o Mark Thomas Company) as of December 8, 1953, and on December 13, 1953, the contractor was so informed.

Between the date of formation of the contract and the time of the issuance of the permit, the parties engaged in correspondence regarding the permit. The contractor sent two letters to the district, one dated October 30, 1953, which stated that a Mr. Savio of Mark Thomas & Co. had advised the contractor that he could not proceed until a sewer contractor had finished his work, and that the district had not yet obtained the permit. The second letter, dated November 23, 1953, stated that the contractor was unable to commence work

because the sewer contractor had still not completed his operations.

Due to the delay in obtaining the permit the contractor did not complete performance under the contract prior to the onset of winter rains. In order to avoid penalties for delayed performance the contractor requested the district to extend the time for the completion of the contract, and it did so, continuing the period from the original terminal date to July 10, 1954. The wet weather, which intervened, necessitated additional work to prevent interference with the normal flow of traffic.

Moreover, in the laying of the pipe, numerous leaks occurred, requiring additional work on the part of the contractor. He now contends that these leaks resulted from the inadequate size of the pipe used; that the district knew that working pressures would exceed the 150 pound test pressure. Although the contractor contends that the specifications annexed to the contract called for the installation of class 150 asbestos pipe, examination of the specifications discloses as the only provision regarding size of pipe the following paragraph: "2.5—ASBESTOS-CEMENT PIPE: The pipe shall be asbestos-cement water pipe in the sizes indicated on the Plans and shall conform to the Tentative Standard Specifications for Asbestos-Cement Pipe, approved as tentative on May 15, 1953, by the American Water Works Association and published as AWWA C400-53T. The Contractor shall furnish at the request of the District Engineers a sworn statement by the manufacturer of said pipe that the requirements of the Standard Specifications hereinabove referred to, have been met." Perhaps the contractor means to state that the "test pressure" required in the specifications was 150 pounds per square inch, which under such "Tentative Standard Specifications" called for class 150 pipe.

Two engineers testified that this type of pipe sufficed for this project. Although the above mentioned "Tentative Standard Specifications" states that class 150 pipe should be used for maximum working pressures of 150 pounds, the expected pressure here reached 160-165 pounds. The evidence discloses that on some projects the district now uses class 200 pipe, but that it also utilizes class 150 pipe. Moreover, class 150 pipe was installed in another water line constructed at about the same time and subject to the same working pressures as that involved here; yet that line experienced only the normal number of leaks. Some testimony indicates that

the contractor's workmen did not lay the pipe carefully and that many leaks resulted both from the type of joint used and improper joining of the pipes.

Turning to the complaint, we note that it alleges four causes of action. The first two counts refer to the district's alleged failure to procure an encroachment permit; the third and fourth causes pertain to the district's alleged improper design of the water system. Thus the contractor alleges in the first count that the contractor and the district entered into a contract which required the district under the laws of California to obtain the permit and that it negligently failed to do so, thereby causing the contractor additional expenses. The second count essentially duplicates the first, with the exception that here the contractor alleges breach of an implied covenant or condition requiring the district to procure an encroachment permit.

The third cause alleges that the district negligently designed the water system in that the specifications annexed to the contract provided for a class of asbestos pipe which proved insufficient to withstand the encountered pressures in the system. The contractor, at an added cost of $10,000, repaired the leaks caused by the district's claimed negligence. Alleging substantially the same facts as the third cause, the fourth count differs from it only in that here the contractor claims the existence of an implied covenant that the water system had been properly designed and that the district wrongfully breached this covenant.

The trial court found that all of the allegations in the first two causes were correct, but fixed the amount of damage due to the extra work at $4,000 instead of $8,000. The trial court, however, held against the contractor on the third and fourth counts. The district appeals from the judgment as to the first two causes and the contractor appeals from the denial of relief under the third and fourth causes.

We separately analyze each of the salient elements of the case. We initially examine the trial court's rulings on the first two causes of action, pointing out that we cannot find a sufficient basis to uphold the judgment on those causes. We next examine the findings as to the third and fourth counts, regarding the type of pipe utilized and the issue of the breakage, and conclude that the evidence amply supports the judgment. We finally point out that the resolution of the district's contention that the statute of limitations bars the first cause becomes unnecessary in view of the foregoing conclusions.

Although the judgment on the first two causes rests upon the failure of the district to obtain an encroachment permit, we find no facts in the record sufficient to impose upon the district a duty to obtain such a permit. The factual background as to the issuance of the permit discloses that, despite the district's conceded timely application for a permit, the Division of Highways did not issue the permit until approximately two months after the date of the contractor's required commencement of performance. The delay resulted from a rule that the Division of Highways would not allow two contractors to work simultaneously and opposite each other upon the same highway. At the time, with the knowledge of both parties, a sewer contractor was engaged in the performance of work along the highway. Although he was to have completed his work earlier, the sewer contractor required an extension of time. The evidence shows that both parties were aware of his presence and that the specifications provided for preference of the sewer contractor. Although the district admittedly knew of this impending delay before letting the instant contract, the evidence does not show that the district caused the postponement or that the contractor did not know that such delay might occur.

In the face of the contractual provisions that place upon the contractor the obligation of obtaining all permits, we must, in order to sustain the contractor's position, find some reason for shifting this burden to the district. Yet the contractor proffers no clear theory upon which to base this transposition of obligation; indeed, he does no more than argue the facts of the case in an attempt to prove that they support the result. We have, however, fashioned legal hypotheses of our own in an attempt to support this contractual mutation, but none, to our satisfaction, sustain it.

As we shall explain, the imposition upon the district of the duty of obtaining the permit cannot rest upon an alleged interpretation of the contract in the light of the custom of the industry; the duty is not an "implied condition" of the contract; it cannot stem from any modification of the agreement by the parties; it cannot derive from an estoppel against the district; finally, neither statute nor decision creates it. Even if we did adopt the theory that the district should have obtained the permit, however, the contractor still fails to show how the district was negligent in not sooner procuring it and thus offers no basis for charging the district with liability.

The contractor's attempt to introduce a custom in the industry to shift the burden of procuring the permit to the district cannot overcome the clear terms of the contract. ▮ "[I]t is not competent to vary a written contract by parol proof of a custom where the contract is certain in its terms." (*Withers* v. *Moore* (1903) 140 Cal. 591, 597 [74 P. 159]; see also: *Peiser* v. *Mettler* (1958) 50 Cal.2d 594, 609 [328 P.2d 953, 74 A.L.R.2d 1]; 12 Cal.Jur.2d, § 140, pp. 351, 352.)

▮ Neither party claims that the word "permits" poses an ambiguity. The contractor merely claims that the normal meaning of the agreement is altered by the custom of the industry. Yet section 1870 of the Code of Civil Procedure provides: "[E]vidence may be given upon a trial of the following facts: . . . 12. Usage, to explain the true character of an act, contract, or instrument, *where such true character is not otherwise plain*; but usage is never admissible, except as an instrument of interpretation. . . ." (Emphasis added.) The contractor does not show, and we cannot find, any respect in which the true character of the instrument is not plain.

Even assuming the presence of some "custom" of the industry, we are given no definition of its nature. Was it an obligation of the district to procure the permit *before* letting the contract, as the contractor urged at oral argument? Was it merely to initiate the proceedings as an accommodation to the contractor so that the contractor would not be required to post a bond, as the district contends? Or was it an obligation of the district actually to secure the permit? The trial court rendered no findings on this vital issue of the custom of the industry, and, in the absence of them, we cannot fix the alleged custom with any exactitude.

Nor do we find any "implied" covenant or contract imposing upon the district the duty of procuring the permit. The "implied" condition cannot expunge and replace the specific provision; it cannot reverse the clear covenant of the parties. The contractor suggests no legal basis for such a holding. We see no evidence of any oral modification of the contract; nothing indicates that either before or after the execution of the contract the district orally promised to procure the permit. Indeed the contractor testified that he did not believe "there was any discussion" along the lines of obtaining the permit "prior to the time I signed the contract." Nor was he ever advised that it was the district's "responsibility . . . [to] obtain an encroachment permit. . . ."

▮ The record does not support any estoppel which

would impose upon the district the duty of obtaining the permit. Such an argument would rest upon the assumption that the district engineer's original attempt to get the permit misled the contractor into the belief that the district would obtain it, and that the contractor relied to his detriment upon the district's representation. Yet we can find nothing in the record to show that the contractor, if he had actually sought the permit at the earlier date, could have procured it sooner than the district did obtain it or, in obtaining it, could have done one whit better than the district. Consequently, even though we were to assume the presence of every other postulate for an estoppel we lack the vital showing that the contractor relied upon the action of the district to his detriment. The party "must rely upon the conduct to his injury." (*Safway Steel Products, Inc.* v. *Lefever* (1953) 117 Cal.App.2d 489, 491 [256 P.2d 32].) Nor did the trial court render any finding as to the bases for any possible estoppel.

The contractor rests a further argument that the district was bound to get the permit upon division 1, chapter 3, of the Streets and Highways Code, particularly upon sections 660 through 695, and, indeed, the court found "[t]hat defendant District was required under the laws of the State of California to obtain an encroachment permit from the Division of Highways of the State of California prior to the time that any person acting in its behalf commenced work of any sort in, upon, or over said highway, or any portion of its right-of-way." The code, however, does not place any obligation upon a district, such as that here, as distinguished from a private party, to obtain the permit. Section 675 endows such a body with certain rights in the case of an emergency and section 678 gives it a right to a permit, subject to reasonable conditions, as well as an immunity to the requirement for a bond. But provisions for these expanded rights of the district does not impose upon it an obligation to procure the permit which another party has contracted to obtain.

The decisions, like the statutory provisions, do not establish that the district must perform the obligations which the contractor would place upon it. In this regard the contractor cites only two cases, *D. A. Parrish & Sons* v. *County Sanitation Dist.* (1959) 174 Cal.App.2d 406, 410 [344 P.2d 883]; *McGuire & Hester* v. *City & County of San Francisco* (1952) 113 Cal.App.2d 186 [247 P.2d 934], and these are not in point. These cases, involving loss caused by a delay by municipal corporations in obtaining easements or rights-of-way to allow

a contractor to lay pipelines, differ from the instant case in two important respects: first, both cases turned upon contracts which expressly required the municipal corporation, and not the contractor, to obtain the easements; second, the cases apparently called for invocation of the power of eminent domain which is not available to private citizens. In the instant case the right-of-way had already been obtained. The only permission thereafter necessary involved the right to excavate along the right-of-way. The Division of Highways grants such a privilege through the encroachment permit.

 Finally, even if we were to accept the contractor's contention that the duty to procure the permit rested upon the district, we still could not hold it liable unless its wrongful conduct caused the contractor's damage. The contractor pleads in his first cause that the district "negligently failed to obtain the . . . permit" and that "said delay was proximately caused by the acts of defendants"; he alleges in his second cause that "As a proximate result of said breach [of the implied condition and convenant of the contract] plaintiff has been damaged. . . ." We do not find in the record a showing of proximate causation to sustain a judgment on either count. The contractor does not adduce any proof that the district could have procured the permit at any date earlier than its issuance, or that the contractor himself, if the district had not been at all involved, could have sooner obtained it.

To sustain the contractor's position we must assume that the district failed to obtain the permit within "a reasonable time"; yet the contractor does not show that the district could have obtained the permit at an earlier date. Certainly the procurement of a permit at the earliest possible date is such procurement within a "reasonable time." The contractor's only possible showing on this score rests upon the fact that the district had an opportunity to foresee the delay. The same engineer served both the water district and the sanitation district which contracted with the sewer contractor. To some extent the membership of the two boards apparently overlapped. The district, then, had the opportunity of knowing the permit might be delayed because of the tardy performance of the sewage contractor. Such possible knowledge, and such partial relationship between the two districts, however, does not indicate that the water district could have controlled the sewer contractor or have *prevented* the delay in the issuance of the encroachment permit.

Finally, the contractor does not show that he could have obtained a permit in a shorter time than that in which the district procured it. Even if the district did originally undertake to get the permit, the contractor presents no right to relief unless the district unduly delayed the rendition of the permit. The liability turns, not on the actual delay in procuring it, but upon a showing that the contractor would have obtained it in a shorter time if the district had not undertaken to do so. Yet no scintilla of evidence supports any such conjectural diminution in the time which the contractor would have consumed to obtain it.

Having concluded that the contractor cannot recover upon the first two counts, we turn to the third and fourth causes, which seek relief for the contractor's added expenditures in the correction of the breakage of the pipes. Claiming an alleged inadequacy of the pipe provided in the specifications to withstand the pressures which were to be expected, the contractor contends that the district negligently designed the proposed water system; he alleges likewise that the contract contains an implied covenant that the specified pipe would withstand pressures encountered in the system. Although the trial court found the above allegations untrue, the contractor contends that the evidence does not sufficiently support its findings. As we shall see, substantial evidence supports the conclusion not only that the installed pipe was adequate, but also that the added expense arose from the contractor's own improper installation.

Turning to evidence as to the sufficiency of the class 150 pipe, we note the testimony of two engineers who stated that the use of class 150 pipe would not be improper under the circumstances. The evidence likewise shows that the district properly obtained from the San Francisco Water Department information regarding pressures to be expected in the system which supported the district's position. Although the contractor submitted rebuttal testimony as to the sufficiency of the pipe, such evidence merely created a conflict which the trial court resolved. The clear testimony of the engineers that the pipe was not improper served as substantial evidence to sustain the trial court's finding.

As we have stated above, the record discloses testimony to the effect that the leaks in the line may have been due to the contractor's own conduct in utilizing a type of joint, with which he was not familiar, in connecting each link

of pipe. Some testimony likewise indicates that the employees of the contractor often did not properly handle or join the pipes and that they worked too fast. A pipe installation instructor for Johns-Mansville testified that he examined the site and saw many of the leaks. He stated that most of them were caused by an improper placement of a ring at the joint. The above testimony supports the conclusion that the cause of the added expense lay not in the bursting of the pipes but in the contractor's improper handling of them. The evidence thus amply supports the court's findings as to the third and fourth causes of action.

Our conclusion that the contractor cannot recover upon the first two causes renders unnecessary any discussion of the argument, urged upon appeal, that the first cause is barred by the statute of limitations.

In summary, the contractor, whose late performance was excused by the district, cannot hold the district liable for added costs incurred by that late performance. If the delay emanated from the tardy appearance of an encroachment permit, the contractor cannot charge the delay to the district when his contract provided that he was to obtain all necessary permits and when he does not show how the district could have sooner obtained it. He cannot, indeed, escape from his own contractual commitment.

We reverse the judgment as to the first and second causes of action and affirm the judgment as to the third and fourth causes of action. Each party shall bear its own costs on appeal.

Bray, P. J., and Sullivan, J., concurred.