[Civ. No. 22162.   Second Dist., Div. Two.   Apr. 24, 1957.]

FRANK H. DEA, Appellant, v. DOLORES M. DAVY, Respondent.

Anderson, Adams & Bacon for Appellant.

Earl D. Reese for Respondent.

ASHBURN, J.—Appeal from judgment of nonsuit in action to recover a real estate broker's commission.   On September 23, 1955, defendant owner signed an authorization for plaintiff broker to sell her "Trailer Park" for a price of $76,500, with a down payment of $15,000.   On October 4, 1955, defendant signed a new "Owner's Statement" setting forth the terms upon which she would dispose of her property.   The terms of sale included in this writing are substantially different from those of September 23d and we look to the later one as a basis for determining whether the agent performed such acts as would entitle him to collect a commission.

The instrument of October 4 essentially provides for a lease

for three years with an option to purchase at the expiration of that period. The price is fixed at $76,500, and the body of the seller's authorization says: "I agree to the following $6000.00 Cash—$650.00 per month rental for three years or a total of $29,400.00 has been paid: At that time buyer may exercise his option to purchase, the $29,400.00 to be then considered as a down payment. Price to be the same as previous listing. Renter to pay taxes, insurance and upkeep. Owner to pay loans until such time as renter exercises option. Owner to pay Dea Realty Company ($1000.00) one thousand dollars at time above arrangement is made and the balance of commission ($2825.00) twenty eight hundred and twenty five dollars. When buyer exercises option to purchase. At that time buyer to pay ($3000.00) in cash, three thousand dollars, making a total of $32,400.00 to be applied against total purchase price. At time option is executed buyer to purchase subject to existing trust deeds, as paid down at that time, and seller to execute a purchase price trust deed to buyer for any difference there may be at that time, said trust deed to be payable at the rate of 1% per month including 6% interest."

There is no mention of a policy of title insurance[1] and no reference to an escrow; no indication that payment of the $6,000 is to be deferred at all. That sum, plus the cash rentals and $3,000 payable upon exercise of the option, aggregate $32,400, the full amount of cash to be paid. There appears to be no occasion to bring down title until that time arrives, and certainly no indication in the writing that it would be done sooner, or that the "$6,000 cash" payment should be held in escrow awaiting that event or any other one.

Plaintiff procured from one Cuthill and wife a written offer dated October 21, 1955, a "Deposit Receipt," signed by the broker and the buyers, which acknowledges payment of $600 as a deposit on account of the purchase price, and says: "Balance of ($5400.00) fifty four hundred dollars to be deposited in escrow within thirty days from date. Rents to be pro rated outside of escrow. Possession when deal comes out of escrow." The other terms square with the owner's authorization except that the printed portions call for a policy of title insurance, a return of the deposit in event of failure of seller to perfect title within a reasonable time, and further says:

---

[1] The first authorization did contain an agreement to furnish satisfactory policy of title insurance, but this provision was not incorporated in the document of October 4, either expressly or by reference.

"Seventh—Place of escrow_____." It also provides "that the property is sold subject to approval of the owner." This approval was never forthcoming. The owner did not execute the deposit agreement and refused to sign escrow instructions when presented to her. ■ This deposit receipt, with its provision for cash payment of $600 and deposit of $5,400 in escrow (instead of $6,000 in cash), amounted to a rejection of defendant's terms and the making of a new proposal which defendant declined to accept. Hence the broker failed to perform. The case of *Andrews* v. *Waldo*, 205 Cal. 764, 770 [272 P. 1052], is in point.

Appellant relies on an asserted custom to handle the agreed down payment in the manner of the deposit receipt. His proof on that subject fell short of the goal. After testifying to same he said, on cross-examination: "Q. Mr. Dea, is it not a fact that this custom you spoke of, that the listing agreements which real estate brokers use, provide that an escrow will be opened in a reliable escrow company? A. Yes. Q. And isn't it a fact that these escrow agreements also provide that a policy of title insurance would be deposited in escrow by a reliable title insurance company? A. Yes. Q. Then isn't it a fact that the reason these escrows are opened is because the contract so provides? A. Yes."

■ The Andrews case, *supra*, says, at page 770: "But by express code provision stipulations which are necessary to make a contract conformable to usage are implied only in respect to matters concerning which the contract manifests no contrary intention. (Civ. Code, § 1655.) In other words, where the known usage and the contract are in conflict the contract prevails." That is the situation at bar. The court properly granted a nonsuit.

Judgment affirmed.

Moore, P. J., and Fox, J., concurred.