[L. A. No. 24894. In Bank. July 11, 1958.]

HENRIETTA M. PEISER et al., Appellants, v. WILLIE H. METTLER et al., Respondents.

CARTER, J.—Plaintiffs appeal from an order granting defendants' motions for a change of venue from Los Angeles County to Kern County. The motions were made and granted on the grounds of (1) residence of defendants; (2) that the action involved damage or injury to real property situated in Kern County; and (3) because of convenience of witnesses.

The complaint alleges that the controversy here involved grew out of a written lease agreement involving land situated in Kern County. Plaintiffs are the original lessors, or their successors; defendant Mettler was the original lessee. Defendant Mettler assigned the lease to defendants Fry who sublet the easterly one-half of the premises to defendant Garner who subsequently sublet part of his interest to defendant Moore. The lease was executed and recorded in 1945. Under the terms of the lease the lessee was given the option to extend the term thereof for a five-year period. The option was exercised by defendants Fry as will hereinafter appear.

The lease which is made part of the complaint provides: "4. That Lessee shall drill and complete two (2) wells to irrigate said land in the proper cultivation and farming thereof; that Lessee shall construct and lay at least two (2) miles of fourteen (14) inch concrete irrigation pipeline and install pumps for such irrigation purposes; that the aforesaid construction and installation of pumps, pipeline and any and all other improvements that may be made by Lessee shall be at the sole cost and expense of Lessee.

"5. That upon the expiration or sooner or other termination of this lease all of said pipeline and pumps so built and installed as aforesaid, and all other improvements of a substantial or permanent character, or that may be attached to the land, shall revert to and become the absolute property of Lessor, free and clear of any and all claims against the same."

The lease then continued as follows:

"11. That in the event Lessee desires to extend the term of this lease for an additional five (5) years from date of expiration hereof the option herein granted for such extension must be exercised by said Lessee by written notice to Lessor of Lessee's intention so to do not less than three (3) months before the date of expiration."

"13. In the event Lessee assigns or subleases any of the leased land in whole or in part, Lessee shall remain responsible and liable for the performance of all obligations herein contained, unless consent of Lessor is obtained in writing, to assign or sublease."

"17. That this lease and all the terms, covenants and conditions herein contained, subject to the provisions as to assignments, shall apply to and bind the heirs, executors, administrators and assigns of the parties hereto."

In 1947, Mettler, the original lessee, assigned the lease to defendants Fry who agreed that they would "well and truly keep and perform each and every covenant and condition in said lease [the original lease agreement] provided to be performed by the lessee and will hold the assignor herein free and blameless from payment of said rentals and performance of said covenants and conditions."

In 1949, defendants Fry sublet, subject to the "Assignment of Lease," to defendant Garner the easterly one-half of the property. In 1950, defendants Fry gave written notice to plaintiffs that they intended to exercise the option to extend the lease for a five-year period. Defendant Mettler did not obtain written consent from the original lessors for the assignment to defendants Fry.

At various times subsequent to the execution of the original lease defendants installed in or built upon the leased premises: "1. A pipe line more than two (2) miles in length and approximately 14″ in diameter was built and installed in the land. 2. Three (3) deep wells were drilled and constructed to connect with said pipe line as integral part of the irrigation system of said property. 3. As appurtenances to said wells there were attached thereto shafts, boles, pumps, motors and pipelines, all of which were integral parts of the irrigation system of said property. 4. There were also installed and attached to pipelines three (3) sumps, together with their appurtenances, including three (3) tail-water pumps, motors and pipe lines, all of which were also integral parts of said irrigation system. 5. There were built upon said property two (2) one-story dwelling houses, one (1) duplex dwelling house, one (1) general utility building, one (1) two-car garage, one (1) shed and additional structures, the exact nature and character of which are unknown to plaintiffs and are well known to defendants."

Plaintiffs allege that defendants, or some of them, breached the terms of the lease by removing from the premises one deep well shaft, bole, pipeline, motor and pump; two tail-water pumps and motors and pipelines attached; two dwelling houses; one duplex dwelling; one general utility building; one shed; and the other buildings heretofore described to their damage in the sum of $31,275.20. The complaint sets

forth four "causes of action": (1) breach of contract; (2) damages for conversion of the structures and improvements; (3) restoration and redelivery of the removed property together with damages resulting from the cost of reinstallation and for loss of use; and (4) one for waste to the real property arising from the removal of the heretofore described property.

Defendant Mettler, defendants Fry and defendants Garner and Moore filed three separate answers. At the same time all defendants filed separate motions for change of venue (the grounds of which have been heretofore set forth) from Los Angeles to Kern County. The affidavits in support thereof, which plaintiffs unsuccessfully moved to strike, will be considered subsequently.

Plaintiffs concede that if any of the three grounds upon which the trial court granted defendants' motions for change of venue can be supported the order should be affirmed.

## RESIDENCE OF DEFENDANTS

Defendant Mettler by affidavit admits that he is a resident of Los Angeles County. The other defendants are residents of Kern County. It is defendants' argument that defendant Mettler was joined only for the purpose of securing venue in Los Angeles County. Plaintiffs, on the other hand, maintain that Mettler is a proper and necessary party. Therefore, the first question that presents itself is whether the complaint states a cause of action against defendant Mettler. ▮ "The nature of the *cause of action* so far as it affects or determines the place of trial will be ascertained from the complaint alone, and the court will inspect the complaint for the purpose of determining the character of the action and the judgment which may be rendered." (*Sam Finman, Inc.* v. *Rokuz Holding Corp.*, 130 Cal.App.2d 758, 759-760 [279 P.2d 982].) We held in *Kaluzok* v. *Brisson*, 27 Cal.2d 760, 762 [167 P.2d 481, 163 A.L.R. 1308], that "To decide the question [as to whether a defendant was entitled to a change of venue] it is necessary to determine the nature of the action as disclosed by the complaint, and the scope of the judgment which might be entered on default (*Neet* v. *Holmes*, 19 Cal.2d 605 [122 P.2d 557]; *Eckstrand* v. *Wilshusen*, 217 Cal. 380 [18 P.2d 931]; *Grocers' Fruit Growing Union* v. *Kern County Land Co.*, 150 Cal. 466 [89 P. 120]; *McFarland* v. *Martin*, 144 Cal. 771 [78 P. 239])." ▮ Plaintiffs' first cause of action is for damages for breach of contract which is clearly a transitory cause of action. In the Kaluzok case, *supra*, the action was one

for damages for fraudulent representations made by the sellers of real property in order to induce the plaintiffs to buy land. In holding that the action was a transitory one, we said that the "gravamen of the present action is damages for deceit" and that the "title to the real property would not be affected. That title remains in the plaintiffs as before, encumbered by the same deed of trust given to secure whatever sum the plaintiffs are in law obligated to pay the defendants. No interest in the real property is determined or affected." (*Kaluzok* v. *Brisson*, 27 Cal.2d 760, 763, 764 [167 P.2d 481, 163 A.L.R. 1308].)

It will be recalled that under the terms of the lease agreement defendant Mettler remained liable to the lessors on the lease even though he assigned it unless he obtained the written consent of the lessors. No such written consent was obtained. Mettler's assignees took with notice of the terms and provisions of the lease and subject thereto. The complaint alleged a breach of the terms of the lease by defendant Mettler and/or the defendant assignees. ▮ However, as we held in *De-Hart* v. *Allen*, 26 Cal.2d 829, 832 [161 P.2d 453], "Ordinarily an assignment of a lease does not release the lessee from his obligations even though the lessor consents to the assignment. (*Samuels* v. *Ottinger*, 169 Cal. 209, 212 [146 P. 638, Ann.Cas. 1916E 830].) Nor does the express assumption by the assignee of obligations under the lease affect the liability of the lessee to the lessor. (*Lopizich* v. *Salter*, 45 Cal.App. 446, 449 [187 P. 1075] ; 32 Am.Jur. 315.) ▮ It has sometimes been said that the effect of an assignment is to make the lessee a surety for the assignee. (*Samuels* v. *Ottinger*, 169 Cal. 209, 212 [146 P. 638, Ann.Cas. 1916E 830] ; *Brosnan* v. *Kramer*, 135 Cal. 36, 39 [66 P. 979] ; *Schehr* v. *Berkey*, 166 Cal. 157, 160 [135 P. 41].) This may be true in a limited sense as between the assignee and his assignor, the lessee, but as between the lessor and the lessee the latter remains a primary obligor under his express contract to pay rent. (*T.A.D. Jones Co.* v. *Winchester Repeating Arms Co.*, 55 F.2d 944, 61 F.2d 774, cert. denied, 288 U.S. 609 [53 S.Ct. 401, 77 L.Ed. 983] ; Tiffany on Landlord and Tenant, vol. 1, p. 994; 32 Am.Jur. 310-311, 321.)" ▮ It is obvious from the above cited rule that defendant Mettler remained liable under the lease and was, therefore, a proper and necessary party to the action and that the complaint states a cause of action as to him. (*Russello* v. *Mori*, 153 Cal.App.2d 828 [315 P.2d 343] ; *Taff* v. *Goodman*, 41 Cal.App.2d 771, 776 [107 P.2d 431].) In *Cali-*

*fornia Collection Agency* v. *Fontana*, 61 Cal.App.2d 648, 653 [143 P.2d 507], an order granting a motion for a change of venue was reversed. The court there said: "It also appears clear from the language of the decisions that upon the hearing of such motion, the court should not try, upon conflicting affidavits, the issues of fact going to the merits of the cause of action stated against the resident defendant. (*Pacific Coast Auto. Assn.* v. *Ahlf*, 115 Cal.App. 21, 24 [300 P. 841] ; *Sourbis* v. *Rhoads*, 50 Cal.App. 98, 101 [194 P. 521] ; *Mitchell* v. *Kim*, 42 Cal.App. 111, 114 [183 P. 368] ; *Lakeshore C. Co.* v. *Modoc L. & L. Co.*, 108 Cal. 261, 262 [41 P. 472] ; *McKenzie* v. *Barling*, 101 Cal. 459, 462 [36 P. 8].)

 In our opinion the rule, supported by reason and by authority, is that upon the hearing of the motion for change of venue under the circumstances presented here, the real issue for determination by the trial court was whether plaintiff, in joining the resident defendant as a party, had reasonable grounds for the belief in good faith that plaintiff had a cause of action against the resident defendant. If he did, then we do not believe that it may be said that the resident defendant was *improperly* joined as a defendant or was made a defendant *solely* for the purpose of having the action tried in the county of the residence of the resident defendant within the meaning of section 395 of the Code of Civil Procedure." (*McClung* v. *Watt*, 190 Cal. 155 [211 P. 17] ; *Freeman* v. *Dowling*, 219 Cal. 213 [25 P.2d 980] ; *Gottesfeld* v. *Richmaid Ice Cream Co.*, 115 Cal.App.2d 854 [252 P.2d 973].) It follows, from the foregoing, that the trial court erred in granting defendants' motion for a change of venue on the ground of defendants' residence.

LOCAL OR TRANSITORY NATURE OF THE CASE

 The question of the transitory or local character of the causes of action must be determined from the allegations of the complaint on file at the time the motion was made and from the nature of the judgment which might be rendered thereon, assuming the truth of the allegations. (*Neet* v. *Holmes*, 19 Cal.2d 605, 607 [122 P.2d 557] ; *Sheeley* v. *Jones*, 192 Cal. 256 [219 P. 744] ; *Eckstrand* v. *Wilshusen*, 217 Cal. 380 [18 P.2d 931] ; *Sausen* v. *Anderton*, 129 Cal.App.2d 324 [276 P.2d 814] ; *Bybee* v. *Fairchild*, 75 Cal.App.2d 35 [170 P.2d 54].)

In the case under consideration, plaintiffs' complaint contained four so-called causes of action: breach of contract;

conversion of certain structures and improvements; restoration and reinstallment of the same structures and improvements; and a cause of action for waste "if such property cannot be restored." Plaintiffs prayed for damages for breach of contract, together with attorneys' fees, for the first two causes of action; for the return of the described improvements together with damages for reinstallation and loss of use on the third cause of action; or, in the alternative, damages for loss of use and the value of the improvements in the event the improvements could not be restored; for damages in the amount of the value of the improvements and for trebled damages in the cause of action for waste.

 It would appear from the allegations and prayer of the complaint that the main relief sought in all four causes of action was personal and that title to, or possession of, real property was only incidentally involved. As we held in *Neet* v. *Holmes*, 19 Cal.2d 605, 611-612 [122 P.2d 557], "The nature of the action here is essentially transitory, that is, the defendants would be entitled to have it tried in the county of their residence, if the determination of an estate or interest in land is merely incidental to the determination of a cause for equitable relief in trust, fraud, or contract. The nature of the action is local, and must be tried in the county where the land is situated, where it turns on the title to property as distinct from the personal obligation, and the decree operates *ex proprio vigore* on the title. (*State* v. *Royal Consolidated Mining Co.*, 187 Cal. 343, 351 [202 P. 133].) In *Booker* v. *Aitken*, 140 Cal. 471 [74 P. 11], an action to recover real property on the ground that a deed of said property was invalid for fraud, was deemed to be local and an order denying a motion for a change of venue to the county of the defendant's residence was affirmed. The principles hereinabove stated were recognized and it was expressly pointed out that in that case neither a personal accounting nor a money judgment was sought, and that the substantial and only specific appropriate relief related to the title of the land deeded to the defendant. Similar cases are *Eckstrand* v. *Wilshusen*, 217 Cal. 380 [18 P.2d 931] and *State* v. *Royal Consolidated Mining Co.*, *supra*.

"In the present case it is obvious that the action turns principally on the personal obligation, as distinct from the title, and that judgment for any mining properties not now owned by the plaintiffs would follow if at all, merely as an incident of the judgment establishing the personal obligation."

In *Rosen* v. *Kessler*, 145 Cal.App.2d 676, 683 [303 P.2d 110], the court held: "Under the general rule, when an action is partly local and partly transitory and stated in separate causes of action, it is to be regarded as transitory in determining the place of trial." (See also *Henderson* v. *Henderson*, 85 Cal.App.2d 476 [193 P.2d 135].)

In *Hardy* v. *White*, 130 Cal.App.2d 550, 552 [279 P.2d 126], the court said: "The well settled rule is that if there is a personal, or *in personam*, cause of action joined with one that is local in nature, the defendant is entitled to have the proceeding transferred to the county of his residence. *The action must be wholly local in nature to require it to be brought in the* county of the situs as designated in section 392, subdivision (a), Code of Civil Procedure. (*Turlock Theatre Co.* v. *Laws*, 12 Cal.2d 573, 576 [86 P.2d 345, 120 A.L.R. 786] ; see California cases collected in 120 A.L.R. 791-792.)" (Emphasis added.)

While the case at bar could be considered to come within the rules just set forth, it appears to us that the complaint sets forth only one cause of action stated on four different legal theories even though the theories are called separate "causes of action." The entire transaction arose out of the alleged breach of the lease agreement by defendant Mettler, the original lessee, and his assignees and the sublessees. The so-called fourth cause of action for waste is also predicated on the lease agreement in that the lease provides, and plaintiffs so allege, that "lessee shall not commit any waste or damage, or suffer any to be done. . . ." It was held in *California Trust Co.* v. *Cohn*, 214 Cal. 619, 629 [7 P.2d 297], that "The seeking of different kinds of relief does not establish different causes of action." (*Security Loan etc. Co.* v. *Mattern*, 131 Cal. 326 [63 P. 482].) The cause of action is based upon the injury to the plaintiff and not the particular legal theory of the defendant's wrongful act (*Panos* v. *Great Western Packing Co.*, 21 Cal.2d 636 [134 P.2d 242]; *Steiner* v. *Thomas*, 94 Cal.App.2d 655 [211 P.2d 321]). In the case under consideration, plaintiffs have alleged but one wrong —the removal of the improvements heretofore described in violation of the terms of the lease. In an analogous situation in a change of venue case the court, in *Maselli* v. *E. H. Appleby & Co., Inc.*, 117 Cal.App.2d 634, 636, 637 [256 P.2d 618], said: "It is obvious from the allegations of all three counts contained in the complaint that the common counts are not based on separate contracts and that there was in fact only

one transaction out of which this suit arose. Although our case law permits the use of common counts, nevertheless the courts recognize that where the common counts follow a count wherein all of the facts on which plaintiff's demand is based are specifically pleaded and the common counts upon their face make it clear that they are based upon the same set of facts, the common counts are to be considered not as different causes of action, but as alternative methods of pleading the plaintiff's right to recover the money judgment he seeks.''

There is no merit to defendants' argument that the ''causes of action'' for conversion and replevin involve ''real property.'' The severance of the fixtures and improvements from the land ''changed the character of the property from real to personal, irrespective of the means by which it was accomplished.'' (*Buckout* v. *Swift,* 27 Cal. 433, 436 [87 Am. Dec. 90].) In *Teater* v. *Good Hope Dev. Corp.,* 14 Cal. 2d 196, 208 [93 P.2d 112], we held that ''. . . Where a fixture annexed to a freehold is tortiously severed, the owner of the realty, at his option, may treat the fixture as personalty and recover the same by the action of replevin. . . .'' (22 Cal.Jur.2d, § 38, pp. 324, 325.)

Whether we consider that there has been a joinder of transitory causes of action with a local action and that the transitory actions control so far as venue is concerned, or whether we consider that plaintiffs have stated only one transitory cause of action, the result is the same under the rules and authorities heretofore set forth and the trial court was in error in granting the defendants' motions for change of venue on the ground that the action was a local one which must be tried at the situs of the real property pursuant to the provisions of section 392 of the Code of Civil Procedure. The fact that defendant Mettler joined with the other defendants in moving for a change of venue is immaterial.

As we said in *Monogram Co.* v. *Kingsley,* 38 Cal.2d 28, 30 [237 P.2d 265], ''Even when all of the defendants join in a demand for or consent to a change of venue the cause will be retained if the complaint attempts in apparent good faith to state a cause of action against a defendant who resides in the county where the action was commenced. . . . [A] plaintiff who has brought this action in the proper county will not be compelled to go elsewhere merely because all of the defendants prefer it.'' (*Independent Iron Works* v. *American Pres. Lines, Ltd.,* 35 Cal.2d 858 [221 P.2d 939].)

## CONVENIENCE OF WITNESSES

Before the convenience of witnesses may be considered as a ground for an order granting a change of venue it must be shown that their proposed testimony is admissible, relevant and material to some issue in the case as shown by the record before the court (*Miller & Lux* v. *Kern County Land Co.,* 140 Cal. 132, 138 [73 P. 836]; *Wong Fung Hing* v. *San Francisco etc. Funds,* 15 Cal.App. 537 [115 P. 331]; *Mize* v. *Old Taylor Fruit Co.,* 114 Cal.App. 588 [300 P. 128]; *Harden* v. *Skinner & Hammond,* 130 Cal.App.2d 750 [279 P.2d 978]).

Plaintiffs concede that the witnesses whose convenience is to be considered are residents of Kern County.

Section 397, subdivision 3, of the Code of Civil Procedure provides that the court may, on motion change the place of trial ''When the convenience of witnesses and the ends of justice would be promoted by the change.'' In *Willingham* v. *Pecora,* 44 Cal.App.2d 289, 295 [112 P.2d 328], it was held that both of the conditions—convenience of witnesses and the ends of justice—must occur and that the moving party has the burden of proving that both conditions will be met.

The affidavits in support of the motion for change of venue on this ground must set forth the names of the witnesses, the nature of the testimony expected from each, and the reasons why the attendance of each would be inconvenient. (*Juneau* v. *Juneau,* 45 Cal.App.2d 14 [113 P.2d 463]; *San Jose Hospital* v. *Etherton,* 84 Cal.App. 516 [258 P. 611]; *Harden* v. *Skinner & Hammond,* 130 Cal.App.2d 750, 755 [279 P.2d 978].)

Some 20 affidavits were filed in support of the motions for change of venue. The witnesses' (as distinguished from the parties' and attorneys') affidavits were devoted, primarily, to averments that there was a custom and usage in Kern County that buildings such as those here involved, pumps, motors, tail water pumps, etc., were considered personalty which were removable by the lessee during, or at the end of the term. Other affidavits were concerned with the value of the improvements and the manner of their attachment to the real property.

Plaintiffs contend that their motion to strike the affidavits should have been granted; that the evidence as to custom and usage was inadmissible, immaterial and irrelevant because

(1) it was not pleaded by the defendants; (2) it was not shown that plaintiffs knew or should have known of the purported custom and usage; (3) that the purported custom and usage would vary and contradict the terms of the lease—not interpret it; and (4) that the testimony relating to the purported custom and usage was to be given by expert witnesses whose convenience is not to be considered.

Defendants concede that custom and usage was not pleaded by them. In *Tharp* v. *San Joaquin Cotton Oil Co.*, 27 Cal.App.2d 554, 561 [81 P.2d 443, 82 P.2d 21], it was held that "it is the invariable rule that evidence of a custom which is not so general in its character that it will be presumed to have been known to the parties or of which a court will take judicial knowledge must be pleaded to warrant the acceptance of evidence of such custom. . . . The appellant failed to plead the custom, the proof of which he sought to introduce." (*Pray* v. *Trower Lumber Co.*, 101 Cal.App. 482 [281 P. 1036].) There is nothing in the record to show that plaintiffs knew, or should have known, of the purported custom and usage and defendants' only argument on this point is that plaintiffs were lessors of farm land located in Kern County. As the court said in *Mize* v. *Old Taylor Fruit Co.*, 114 Cal. App. 588, 590 [300 P. 128], "the affidavit in support of the motion fails to supply this necessary link connecting the testimony of the inconvenienced witnesses with the issues in the case." And, as was held in *Roberts Distrib. Co.* v. *Kaye-Halbert Corp.*, 126 Cal.App.2d 664, 676 [272 P.2d 886], "A person is not bound by a custom or usage unless he had actual knowledge thereof, or it is so general or well-known in the community as to give rise to the presumption of such knowledge." In *Miller* v. *Stults*, 143 Cal.App.2d 592, 602 [300 P.2d 312], it was said: " '. . . Customs of special trades and local usages which are limited to certain communities are not presumed to be known to all persons. (Jones on Evidence, 3d ed., p. 714, § 464.) To bind one who is not engaged in the trade or occupation which employs the usage relied upon, proof of his actual knowledge of the usage is necessary, unless it is so commonly accepted that the public is presumed to recognize its existence. . . .'

". . . So in the case at bar it does not appear that either party manifested an intention to be governed by the asserted custom. . . . There was no evidence that defendant was a farmer. ·[Citation.] So far as the record shows, defendant was a stranger to farming customs." In the case at bar there

is nothing to show that plaintiffs, or any of them, were farmers or that they knew anything of farming customs.

Defendants argue that the purported custom and usage is admissible to interpret the terms of the lease agreement rather than to vary or contradict them. It will be recalled that the lease provided that "upon the expiration or sooner or other termination of this lease all of said pipe line and pumps so built and installed as aforesaid, *and all other improvements of a substantial or permanent character or that may be attached to the land,* shall revert to and become the absolute property of Lessor, free and clear of any and all claims against the same." (Emphasis added.) It will be noted that the provision refers to improvements of a substantial *or* permanent character *or* those attached to the land. In *Realty Dock etc. Corp.* v. *Anderson,* 174 Cal. 672, 676-677 [164 P. 4], we held that "It is, of course, quite apparent that the term 'improvement' is comprehensive enough to embrace all additions or alterations which may be made by a tenant for the convenience of his business upon the premises. It is much more comprehensive than the word 'fixture,' and while including these, includes also many things that may not be classed as fixtures. In fact, if force is to be given to a provision in a lease which provides that all 'improvements' made in premises shall inure to the lessor, it is difficult to conceive of any subsequent addition, alteration, or repair to the premises during the tenancy which would not be embraced within the term 'improvement.'" We also held, in answer to the argument made by the lessee that the property was movable that "It is not a matter of controlling importance whether the vault as constructed was a permanent or a movable fixture. We are not here considering the rights arising by operation of law only between landlord and tenant as to the articles placed upon the leased premises by the latter. On the contrary, these rights are to be determined from the terms of the lease under which the parties undertook to fix them." Defendants' contention that the custom and usage in Kern County was that the tenant could remove improvements placed upon the land is directly opposed to the terms of the lease which provides that all such improvements shall remain on the land and become the absolute property of the lessor. The parties' intention, as expressed by their written agreement, is controlling and, under their agreement "reasonable minds cannot but agree" that the improvements here involved were covered by

the provisions of the lease heretofore quoted (*Wilmerton* v. *Morton*, 74 Cal.App.2d 891, 896 [169 P.2d 992]). ▇ The lease here specifically separated substantial or permanent improvements from those that might be attached to the land so the movable character of any of the improvements under consideration is not a matter of "controlling importance." In *Allen* v. *Alberts*, 82 Cal.App.2d 13, 16 [185 P.2d 372], where the lease provided that all furniture, furnishings, equipment or fixtures installed on the premises, or to be installed, should become the property of the lessor upon termination of the lease, the court said in answer to an attempt by the lessee to introduce evidence of custom and usage to the contrary: "This proposition is likewise without merit. The lease herein involved specifically provided that all personal property and furnishings installed in the premises should be a part of the lease property and belong to the lessors. Hence there was no necessity for introducing any evidence as to custom and usage since the agreement involved was specific and unambiguous." (*Sharpe* v. *Arabian American Oil Co.*, 111 Cal.App.2d 99 [244 P.2d 83]; *Dea* v. *Davy*, 150 Cal.App.2d 435 [309 P.2d 894]; *Miller* v. *Stults*, 143 Cal.App.2d 592 [300 P.2d 312].) ▇ It clearly appears that evidence relative to the purported custom and usage would tend to vary or contradict the terms of the lease agreement and is therefore inadmissible and the witnesses' testimony concerning it is therefore not material.

Defendants' next argument is that "there still remains a serious question of interpretation as to just what property is substantial." Some of the prospective witnesses whose convenience is being considered were to testify to the value of the improvements. While the parties disagree, as is seen from the complaint and answers thereto, as to the value of the improvements, it would appear that in either event the value is substantial as distinguished from inconsequential. ▇ In *In re Scroggin*, 103 Cal.App.2d 281, 283 [229 P.2d 489], the court was considering the word "substantial" as it related to the word "amount." It was there held that the word "substantial" "imports a considerable amount of value in opposition to that which is inconsequential or small." Defendants do not deny that the value of the improvements is substantial. Plaintiffs and defendants agree that expert witnesses with a personal knowledge of the facts of the particular case come within the rule that permits their convenience to be considered (*Figley* v. *California Arrow Airlines*, 111 Cal.App.2d 285 [244 P.2d 472]) but they disagree as to the materiality

of the testimony so far as this particular case is concerned. In other words, plaintiffs argue that any appraiser can give the same testimony without examining the property and that the convenience of these witnesses should not be considered under the general rule. We agree with plaintiffs. The pleadings allege the value of the improvements to be substantial within the meaning of the lease agreement. There is nothing in the record to show that these witnesses are the only witnesses who could testify to the value of the improvements because of their personal knowledge of the facts of the case. In the Figley case experts had examined the scene of an airplane accident and were to give testimony as to their opinion of the causes of the crash. The court in affirming an order denying a change of venue said that "Generally, the convenience of experts should not be considered in determining the question of convenience of witnesses on application for change of venue except where the experts have a personal knowledge of the facts upon which their testimony is to be based. (*Security Investment Co.* v. *Gifford,* 179 Cal. 277 [176 P. 444].)

"In this case, as we have commented, the court might well have considered that what one of these men knew it would be reasonable to suppose all knew, and hence the exception to the rule above stated, based upon personal knowledge of the experts, would have no application." (Pp. 287, 288.) In the case under consideration, affiants Cassady and Gargan had made appraisals of the improvements moved from the property. It appears from the affidavits that the property can be located and it does not appear that any other appraiser could not make the same inspection or that the witnesses would testify that the improvements were not substantial within the meaning of the lease agreement. It does not appear, therefore, that the convenience of these expert witnesses should be considered on the motion for change of venue. The matter of the value of the improvements is a question for the trier of fact upon a trial of the case after hearing expert testimony or receiving stipulation of the parties and should not be considered upon a motion for a change of venue. In *Security Investment Co.* v. *Gifford,* 179 Cal. 277 [176 P. 444] ; *Barnett* v. *United Oil Co.,* 5 Cal.App.2d 175 [42 P.2d 656] ; *Wrin* v. *Ohlandt,* 213 Cal. 158 [1 P.2d 991] ; and *Pacific Coast etc. Ins. Co.* v. *Land Title Ins. Co.,* 97 Cal. App.2d 829 [218 P.2d 573], it was held that the convenience

of expert witnesses such as we have here could not be considered on a motion for a change of venue.

Inasmuch as the witnesses' affidavits do not purport to state that their testimony would be that the improvements were not substantial within the meaning of the lease agreement their testimony would not be material to the issues of the case as presented on the motions for change of venue and the affidavits were, therefore, improperly considered by the trial court.

With reference to the other affidavits, convenience of the parties is not to be considered upon a motion for a change of venue (*Wrin* v. *Ohlandt*, 213 Cal. 158 [1 P.2d 991]) and the case does not fall within the rule of *Simonian* v. *Simonian*, 97 Cal.App.2d 68, 69 [217 P.2d 157], where it was held that a party's physical condition made it impossible for him to travel to a distant county to give "material evidence." The affidavit concerning the physical disability of the senior defendant Fry did not aver that he would be called as a witness to give "material evidence" or state what his evidence would be. On the contrary, it appears that the younger defendant Fry had, for some time, been in charge of the Fry affairs.

There is no merit to defendants' argument that defendant Mettler's books and records were located in Kern County (*Neet* v. *Holmes*, 19 Cal.2d 605, 613, 614 [122 P.2d 557]) and that the court calendar in Kern County is less congested than that in Los Angeles County inasmuch as neither of these reasons falls within the statutory provision regarding change of venue for convenience of witnesses.

Because the record does not show that the prospective witnesses whose convenience was under consideration would testify to facts within their knowledge material to the issues of the case as distinguished from expert opinion evidence of value, the trial court erroneously granted the motions for a change of venue on this ground.

There being no support in the record for the order granting defendants' motions for a change of venue, the order must be and is reversed.

Gibson, C. J., Traynor, J., Schauer, J., and Spence, J., concurred.

McComb, J., dissented.