[Civ. No. 23222.   Second Dist., Div. Three.   Nov. 19, 1959.]

INTERNATIONAL INVESTMENT COMPANY, INC. (a Corporation) et al., Appellants, v. HELEN KING CHAGNON, as Executrix, etc., Respondent.

Robert E. Hatch and Athearn & Athearn for Appellants.

Edythe Jacobs for Respondent.

THE COURT.—Plaintiffs appeal from an order denying a motion for a change of venue.  After the appeal was perfected, the defendant and respondent, Gladyce C. Merola,

died. Helen King Chagnon, as executrix of Mrs. Merola's will, has been substituted as respondent in the place of Mrs. Merola.

The action is to recover for legal services performed under a written agreement executed in San Francisco by plaintiffs Hatch and Athearn, as attorneys, and Mrs. Merola, as client; and to recover for other legal services rendered by said plaintiffs in addition to the services performed by them under the written agreement.

The action was commenced in San Francisco, and on motion of Mrs. Merola was transferred to Los Angeles County. The motion was made and granted on the ground that Mrs. Merola was a resident of Los Angeles County. Plaintiffs appealed from the order granting the motion, and on May 19, 1959, the order was affirmed on appeal. (*International Inv. Co.* v. *Chagnon,* 170 Cal.App.2d 441 [339 P.2d 147].) On that appeal it was held that plaintiffs had united a cause of action based on an implied contract (to pay the reasonable value of the services rendered in addition to the services performed under the contract) with a cause of action based on the written contract, and since they did not allege in the complaint or show by affidavit that the implied contract was made in San Francisco, they had not brought themselves within the exception set forth in section 395 of the Code of Civil Procedure.

Pending the appeal, Mrs. Merola filed an answer and a cross-complaint in the Los Angeles Superior Court. Thereafter plaintiffs made a motion for a change of venue from Los Angeles County to the city and county of San Francisco on the ground that the convenience of witnesses and the ends of justice would be promoted by the change. Mrs. Merola made a countermotion to retain the action in Los Angeles County on the ground that the convenience of witnesses and the ends of justice would be promoted by retaining the action in Los Angeles County. The motion of plaintiffs, for a change of venue to San Francisco, was denied; and the motion of Mrs. Merola, to retain the action in Los· Angeles County, was granted.

Plaintiffs appeal from the order refusing to change the place of trial to the city and county of San Francisco. It will be assumed that the appeal is from both orders just referred to.

Appellants contend that the trial court abused its discretion by denying the motion. They argue that the "uncon-

troverted evidence'' in support of the motion required that the motion be granted.

In support of the motion, plaintiffs presented an affidavit of Mr. Hatch, one of the plaintiffs, and an affidavit of Mr. Geer, the secretary of International Investment Company which is one of the plaintiffs.

Mr. Hatch stated in his affidavit, as follows: He and plaintiff Athearn reside and have their offices in San Francisco, and International has its only office in San Francisco. All of the services ''encompassed'' by the complaint were rendered in San Francisco and were connected with or grew out of the death of Gaetano Merola in San Francisco and probate proceedings of his estate in San Francisco. The retainer agreement, a copy of which is attached to the complaint, was signed by Mrs. Merola, Hatch and Athearn in San Francisco. International holds assets in San Francisco for the joint benefit of Mrs. Merola, Hatch and Athearn. There is no person residing more than 100 miles from San Francisco who knows anything concerning which he could testify that would be admissible at the trial of the action, except Mrs. Merola who did reside in San Francisco at the time she incurred ''these obligations,'' and who thereafter moved to Los Angeles.

The names of more than 50 persons are listed as witnesses in the affidavit and, after each name, a statement is made regarding the subject matter and nature of the testimony to be given by each witness.

Mr. Hatch also stated in the affidavit that plaintiffs intend to call all of those witnesses, or, if the trial is not held in San Francisco, to take their depositions; the testimony of each of those witnesses is material and necessary; he knows that said witnesses will give the testimony stated therein; each of those witnesses resides within 100 miles of the San Francisco city hall.

The list of names includes the names of judges, attorneys, accountants, court reporters, deputy county clerks, newspaper reporters, employees of a storage company, employees of stock brokerage firms, and others. The testimony to be given by each of the witnesses, except one, relates to the services performed for Mrs. Merola by plaintiffs Hatch and Athearn, or by the witnesses.

The names listed in the affidavit include ''Notre Dame Hospital.'' With reference to the proposed testimony under that listing, the affidavit states: ''Manager and nurses, as to

plaintiffs' inducing Mrs. Merola to submit to hospitalization in order to make her fit to testify, and plaintiffs' efforts to keep her from leaving prematurely.''

Also the names listed in the affidavit include ''Lorne Stanley.'' The testimony to be given by Mr. Stanley, according to the affidavit, is as follows: He is an ''Attorney at law who was executor of the Merola will. Knows in great detail, being the attorney for Gaetano Merola during the latter's lifetime, the transactions and travail with Mrs. Merola that formed the background of the legal problems handled by these plaintiffs from 1953 until now, the legal services rendered by these plaintiffs in and out of court, office and other negotiations between the attorneys to prepare the cases for trial and/or try to settle some or all of the differences. Custody of property. Plaintiffs' procurement of the records for analysis; innumerable court appearances, extent of plaintiffs' preparation for litigation. Nature, class and effectiveness of plaintiffs' representation of Mrs. Merola. (Exactly 100% on all contested matters!).''

Another witness, whose name was listed in the affidavit, is Mary Halligan. The affidavit states that she ''Knows of the nature and extent of plaintiffs' services for Mrs. Merola.''

Also the names listed include ''J. H. Geer.'' The affidavit states that his testimony would be that he is secretary of International Investment Company, Inc., plaintiff; he ''Witnessed execution of Merola contracts and participated in arrangement for the trusteeship. Is only officer available to testify to this, together with the complicated stock transactions, dividends, receipts and disbursements necessary to the accounting prayed for in the complaint.''

Mr. Hatch stated further in the affidavit, as follows: There will be at least three expert witnesses, from the San Francisco bar, to testify that the services of plaintiffs, in addition to those prescribed by the written contract, were at least the value prayed for in the complaint. The ''above'' is only a partial list of witnesses and only a fragmentary summary of that to which they will testify.

Mr. Hatch stated further in the affidavit, as follows: It would ''easily'' take a full month to try the case in San Francisco, but if the case were tried in Los Angeles, all of the evidence would have to be adduced by depositions, certified copies, etc. Under such circumstances the trial would take double or triple as much time, effort, and expense of the litigants and the lawyers.

Mr. Geer, secretary of plaintiff International, stated in his affidavit that he had read the affidavit of Mr. Hatch, and the "same" is true as to all matters therein referring to International and himself.

In oppositon to the motion for a change of venue to San Francisco, and in support of her motion to retain the action in Los Angeles County, Mrs. Merola filed her affidavit and affidavits of Helen C. King, Gretchen Wellman, Lorne M. Stanley, and Dr. Clifford B. Cherry.

In her affidavit Mrs. Merola listed the names of eight witnesses and stated certain information regarding each of those witnesses and the nature of the testimony to be given by the witness. Since affidavits of three of those witnesses, Mrs. King, Mrs. Wellman, and Dr. Cherry were filed in support of Mrs. Merola's contention, their proposed testimony as referred to in Mrs. Merola's affidavits will not be set forth herein. (Their affidavits will be considered later.)

The names of such other witnesses listed by Mrs. Merola and nature of their testimony, as referred to in Mrs. Merola's affidavit, were as follows:

Marie Sweeney is a practical nurse who has been in regular attendance upon Mrs. Merola for the past three years. She knows certain facts material to the defense of the action. She is in poor health and it would greatly inconvenience her if she were required to give testimony outside of Los Angeles County.

Harley E. Campbell is a stockbroker employed in the office of E. F. Hutton and Company and has handled Mrs. Merola's stock brokerage account with the company for many years. He has had correspondence with Robert E. Hatch concerning the stock account of Mrs. Merola, and he is familiar with facts material to the issues in the action. He resides in Los Angeles County and cannot be absent from his office for any length of time without prejudice to his business connections.

Pat Moran is an officer of E. F. Hutton and Company in Los Angeles. He knows that plaintiffs attempted to gain control of the stock account of Mrs. Merola; and he knows that said facts are material to Mrs. Merola's defense.

Louis White is branch manager of a bank in Los Angeles. Mrs. Merola consults with him concerning her financial affairs, and he is familiar with and will be a material witness regarding her finances. He is a resident of Los Angeles County and cannot conveniently give testimony outside of Los Angeles County.

Sue Bell is a costume designer who has worked for Mrs. Merola for many years and she is familiar with Mrs. Merola's physical and financial condition.

Helen King (also known as Helen King Chagnou) stated in her affidavit, as follows: She is an attorney and has an office in Hollywood, California. She has been acquainted with Mrs. Merola for many years and is familiar with the litigation in which Mrs. Merola was involved in the probate proceeding of her husband's estate. She and Mrs. Merola interviewed Robert E. Hatch in San Francisco relative to the status of the assets of Mrs. Merola which were held by Mr. Hatch or were held by the International Investment Company, in which he was interested. She has related to Mrs. Merola's attorney all of the conversation which took place at that interview. She has been informed by Mrs. Merola's attorney that her testimony concerning "said matters" will be required at the trial of the action. It would be inconvenient, and a hardship on her clients, if she were required to give testimony outside of Los Angeles County.

Gretchen Wellman stated in her affidavit, as follows: She is an attorney, but retired from active practice because of a heart condition. She has known Mrs. Merola for 30 years. She has related to Mrs. Merola's attorney certain conversations, between Robert E. Hatch and her, "bearing upon the controversy which is the subject-matter" of the action. She has been informed by Mrs. Merola's attorney that her testimony will be required at the trial of the action. She is a resident of Los Angeles and, because of her physical condition, it would be a great inconvenience and work a hardship on her if she were required to give testimony outside of Los Angeles County.

Lorne M. Stanley stated in his affidavit, as follows: He had read the statement in the affidavit of Mr. Hatch (set forth above) concerning the testimony affiant (Mr. Stanley) would give in the action. If he were called as a witness, he "could not so testify." None of the attorneys for plaintiffs interviewed him for the purpose of ascertaining what information he had or whether he would testify as alleged in Mr. Hatch's affidavit. If he had been interviewed, he would have informed the attorneys for plaintiffs that he could not so testify. It is true that he is executor of the will of Gaetano Merola which may be proved by certified copies of letters testamentary.

Dr. Cherry stated in his affidavit, as follows: He is a physician and has an office in Los Angeles. Mrs. Merola has been

under continuous treatment by him for the past five years. She suffers from a complication of diseases, among which are an advanced heart condition and high blood pressure. Three calls a week are usually made at her home. Mrs. Merola's health is precarious. Because Mrs. Merola's ailments are numerous and serious, any extended absence from medical attention would aggravate her condition.

Plaintiffs filed a supplemental affidavit of Mr. Hatch in which he stated, as follows: He had observed Mrs. Merola "almost continuously" from November 17, 1953, to date (October 14, 1957), and he knew the state of her health as completely as any nonmedical person could. Mrs. Merola attended court sessions in San Francisco on many occasions in 1954, and she is as able to come to San Francisco and attend court sessions at this time as she was then. On August 1, 1957, she testified in a legal proceeding in San Francisco, and she was in as good health as she was in 1954.

The attorney-plaintiffs were seeking attorneys' fees under the terms of a written contract whereby they were to receive a contingent fee of 25 per cent of the amount recovered by defendant Mrs. Merola in the probate proceedings in the estate of Mr. Merola. Those plaintiffs were also seeking $25,000 as additional fees, upon a quantum meruit basis, for services in addition to services rendered under the contingent fee contract. Apparently a basis for the additional compensation was that defendant by her conduct caused the plaintiffs difficulties, embarrassment, and worry in performing their duties as attorneys for her. Plaintiffs were claiming that an accounting was necessary because defendant was retaining a large part of the property which had been recovered under the contingency contract. The complaint alleged that the plaintiffs "now possess certain moneys and securities within the terms of said agreement and that they have furnished defendant with an accurate statement of the same." Defendant was claiming that plaintiff International Investment Company, Inc., was the *alter ego* of plaintiff Hatch, and that an accounting should be had because the plaintiffs were in possession of property belonging to defendant. Defendant was also claiming that some of the litigation conducted by the attorney-plaintiffs was unnecessary and was conducted in order to make it appear that property obtained from the estate was recovered under the contingent fee contract.

Plaintiffs herein had the burden of proving that the convenience of witnesses and the ends of justice would be

served by a change of venue. (See *Peiser* v. *Mettler*, 50 Cal.2d 594, 607 [328 P.2d 953].)

▮ Whether a motion for change of venue on the ground of convenience of witnesses should be granted or denied is a matter within the discretion of the trial judge. Appellants assert that there was no conflict in the evidence, and there was nothing upon which discretion could be exercised.

▮ With reference to defendant's (respondent's) affidavits, in opposition to the motion, appellants state that the affidavits do not include the substance of the testimony of the proposed witnesses, and the affidavits are devoid of any substance cognizable in the matter of venue. The issue of venue was to be determined, of course, from a consideration of the affidavits of appellants and respondent in connection with the issues in the action. The principal issues are the amount of fees to be awarded to the attorney-plaintiffs as fees under the contingent fee contract, and the amount to be awarded them as reasonable compensation for services in addition to the services rendered under the written contract. Inasmuch as it is apparent that the principal witnesses on behalf of plaintiffs, regarding the legal services, will be the attorneys who are plaintiffs, the trial judge might have considered that some of the 50 witnesses referred to in plaintiff's affidavit would give testimony that was cumulative on the subject of legal services rendered. The proposed testimony of San Francisco attorneys as to the value of legal services would be expert testimony. The convenience of expert witnesses is not to be considered on a motion for change of venue. (*Peiser* v. *Mettler, supra,* 50 Cal.2d 594, 611 [328 P.2d 953].) Some of the witnesses whose names are listed in the affidavis are employees of plaintiffs. The convenience of those witnesses is not to be considered on a motion for change of venue. (*Wood* v. *Silvers,* 35 Cal. App.2d 604, 609 [96 P.2d 366] ; *Willingham* v. *Pecora,* 44 Cal. App.2d 289, 293 [112 P.2d 328] ; *Carnation Co.* v. *El Rey Cheese Co.,* 92 Cal.App.2d 726, 728 [208 P.2d 63].) Since plaintiffs' list of witnesses included witnesses whose testimony might be regarded as cumulative, and included witnesses whose convenience should not be considered, the trial judge might have believed that the affidavit on behalf of plaintiffs exaggerated or unduly emphasized the number of witnesses whose convenience would be served. Also the affidavit included, in the list of witnesses, the name "Notre Dame Hospital," and the affidavit indicated, with reference to the legal services rendered, that the manager and nurses

would testify as to "plaintiffs' inducing Mrs. Merola to submit to hospitalization in order to make her fit to testify." The trial judge might have considered that the listing of the hospital in the witness column, and the general reference to the "manager and nurses" as witnesses to such alleged legal services, indicated that the affidavit contained references to witnesses whose testimony was of doubtful materiality on the subject of legal services. Also the list of witnesses on behalf of plaintiffs included the name Lorne Stanley, who is an attorney and the executor of the will of Mr. Merola. The affidavit stated at some length, as hereinabove shown, the nature and subject matter of the proposed testimony of Mr. Stanley. Among other things, the affidavit stated that Mr. Stanley knows in great detail the legal services rendered by plaintiffs, and the transactions and travail with Mrs. Merola that formed the background of the legal problems; that his testimony would relate to the nature, class, and effectiveness of plaintiffs' representation "(exactly 100% on all contested matters!)." It is to be noted that Mr. Stanley states in his affidavit (which respondent filed in opposition to the motion) that he "could not so testify," as indicated in the affidavit of plaintiffs; that none of the attorneys interviewed him for the purpose of ascertaining whether he would testify as indicated in the affidavit; that if he had been so interviewed he would have informed the attorneys that he could not so testify. In view of Mr. Stanley's affidavit, the trial judge might have concluded that the affidavit on behalf of plaintiffs was inaccurate with respect to material testimony of an important witness; and, by reason thereof, the trial judge might have suspected that the affidavit on behalf of plaintiffs was inaccurate with respect to the testimony and convenience of other witnesses.

The affidavit of Mrs. Merola, in opposition to the motion, states that Mr. Campbell, an employee of E. F. Hutton and Company in Los Angeles, had handled the stock account of Mrs. Merola for many years, including a long period before the time she employed the attorney-plaintiffs; and that Mr. Moran, an officer of E. F. Hutton and Company, knows that plaintiffs attempted to gain control of Mrs. Merola's stock account. The relevancy of such testimony is indicated by the fact that the complaint alleges that the value of the things recovered by plaintiffs under the contingent fee agreement is to the best of plaintiffs' knowledge and belief $200,000, and that it is impossible to allege the precise amount for the reason

a large part of the assets, particularly the securities which were held by Mr. and Mrs. Merola with E. F. Hutton and Company, are in the sole custody of defendant Mrs. Merola; that plaintiffs have not had access "to the nature and extent" of those assets, although they have frequently requested defendant to render an accounting of the same or permit plaintiffs to obtain said information from E. F. Hutton and Company. The affidavit of Mrs. Merola also states that Mr. White, who is the manager of a bank in Los Angeles, is familiar with her financial affairs and is a material witness regarding her finances. Also the affidavit of Mrs. Merola states that the long list of witnesses has been inserted in the affidavit (on behalf of plaintiffs) in a fictitious attempt to impress the court by sheer numerical majority that the convenience of witnesses would be served by changing the venue. Also Mrs. Merola's affidavit states that she attempted to contact Mary Halligan, who is named in Mr. Hatch's affidavit as a prospective witness for plaintiffs, and she was told by the daughter of Mrs. Halligan that Mrs. Halligan had had two paralytic strokes, was inarticulate and bedridden, and was unable to attend any court proceedings.

Miss Edythe Jacobs, the attorney for defendant, stated in one of her affidavits that on October 9, 1957, she appeared in the probate department of the Superior Court in San Francisco in regard to an account in the estate of Mr. Merola, and during the proceeding the judge said that Mrs. Merola had "caused too much trouble to the courts of San Francisco with her contentious litigation." Miss Jacobs also stated in her affidavit that the litigation referred to by the judge was instituted by the attorney-plaintiffs herein and that much of the litigation. was unnecessary; that by reason of the unnecessary litigation, the attorney-plaintiffs have placed defendant (Mrs. Merola) in a prejudicial position in the courts of San Francisco; that it would promote the ends of justice to have the cause tried in a jurisdiction other than San Francisco.

In the present matter, the trial judge had the responsibility of determining the weight to be accorded the various affidavits. The judge was not required to regard any affidavit as controlling in the matter of convenience of witnesses. As above indicated, if the judge considered that part of an affidavit was inaccurate in a material respect he might suspect that the affidavit was inaccurate in other material respects. The affidavits were conflicting in material respects as to the convenience of witnesses. It cannot be said as a matter of law

that the plaintiffs carried the burden of proving that the convenience of witnesses and the ends of justice would be served by a change of venue. It does not appear that the judge abused his discretion in determining the motion for a change of venue.

The order denying the motion for a change of venue, and the order granting the motion to retain the action in Los Angeles County, are affirmed.