[Civ. No. 386.   Fifth Dist.   Dec. 15, 1964.]

FRED R. ADAMS, Plaintiff and Appellant, v. ALEX ANGELICH, Defendant and Respondent.

William A. Hill for Plaintiff and Appellant.

Crowe, Mitchell, Hurlbutt & Clevenger and Robert P. Long for Defendant and Respondent.

CONLEY, P. J.—The plaintiff, a real estate broker of Porterville and Goleta, appeals from an adverse judgment in an action by which he seeks to recover a fee for allegedly finding a purchaser ready, able and willing to buy the 20-acre orange grove in Kern County owned by the defendant, Alex Angelich, and his tenant in common, Mike Janoko. The defendant and Mr. Janoko inherited the land from a cousin; Mr. Janoko was in charge of the agricultural operations, but Mr. Angelich who lived in Long Beach was a stranger to orange growing.

The record shows that in the late spring of 1962 the cotenants discussed between themselves the possible sale of the property with particular stress on the figure of $85,000.

The respondent heard no more about a sale until the early part of August 1962, when Frank Janoko, Jr., licensed real estate salesman working for the plaintiff and incidentally a nephew of Mike Janoko, came to his apartment in Long Beach and told him he had a buyer who would pay $85,000 for the land. At that time, respondent said he wanted $90,000, and, in compliance with the proposed sale figure, Mr. Angelich and Mr. Mike Janoko signed a written agreement giving Mr. Adams an exclusive right to sell the real property from August 8, 1962, to November 30, 1962. The owners granted Mr. Adams "the sole and irrevocable right to sell said property within said time for $90,000" and authorized him to accept a deposit thereon with the following terms: "Forty Eight Thousand Dollars ($48,000) cash down payment. Seller to take back First Trust Deed in the amount of Forty Two Thousand Dollars ($42,000) payable in seven equal Installments of Six Thousand Dollars ($6,000) plus 6% per annum." The agreement provided for a 5 per cent selling price commission. The instrument was dated the 13th day of August, 1962, and was signed by both of the coowners, as well as by Frank Janoko for Mr. Adams.

The real estate salesman succeeded in interesting Elmer H. Rohwer and his wife, Bethel L. Rohwer, as possible purchasers. Mr. Rohwer went to the orange grove with experts in the business, estimated the growing crop, made tentative arrangements for its sale, and secured a promised credit from a banker for sufficient funds to make a substantial down payment after getting the backing of his father-in-law.

On November 1 or 2, 1962, Frank Janoko, Jr., went to respondent's apartment in Long Beach and told him that he had a buyer. At that time, he showed respondent a handwritten form of deposit receipt; respondent started to read it but when he saw that it provided for the inclusion of the orange crop, he went no further to ascertain if there were any other objections to the receipt; he told Frank Janoko, Jr., that he would not sign for a sale that included the crop growing on the real property, which was estimated to be of a value of from $25,000 to $30,000 and was almost ready for picking. This handwritten deposit receipt is not in evidence; the testimony was that it was later thrown into the wastebasket by the plaintiff. It is not the document upon which the appellant bases his alleged right to a commission; however, there is evidence that in any event it did not conform with the offer of sale because it contained a provision

that if in any year the crop was destroyed or seriously damaged the payment for such year would be deferred. Instead, a later document is relied upon, the evidence concerning which is as follows: when Frank Janoko, Jr., went back to Porterville, he and Mr. Adams talked further with Mr. and Mrs. Rohwer, and the prospective purchasers as well as Mr. Mike Janoko then executed a deposit receipt dated November 5, 1962, which is in evidence in the case. The respondent never actually saw this document and, therefore, did not have occasion to make objection to any of its provisions; however, Mr. Adams telegraphed to Mr. Angelich that he had secured a purchaser ready, able and willing to buy on the terms contained in the agreement for the exclusive right to sell; the defendant admitted receiving this telegram, but he testified that he thought that the communication had reference to the handwritten document which Frank Janokó, Jr., had shown him in Long Beach.

The basic question in the case is whether or not the real estate broker produced a purchaser ready, able and willing to buy the orange grove upon the terms set forth in the listing. The trial judge filed a memorandum decision in which he stated that in his opinion the respondent's agreement to sell the land included the growing crop, and this conclusion is in line with common sense, the custom of the country and the law. However, the trial judge points out that Mr. Rohwer did not in fact deposit in escrow, or pay to the owners, the sum of $48,000 in cash as called for by the listing agreement, and that the terms of the deposit receipt in other respects also differed vitally from the offer to sell. The court, therefore, found that the writing executed by the Rohwers was not an acceptance of the offer contained in the agreement to sell, but actually constituted a counteroffer which was never accepted by respondent.

The deposit receipt is dated November 5, 1962, and recites that Adams Realty through Frank Janoko, Jr., has received from Elmer H. Rohwer and Bethel L. Rohwer a check for $2,000 as a deposit on account of the purchase of the real property for $90,000; it states that the buyer would also deposit in escrow with Guy Knupp (Porterville Escrow Co.) the balance of the purchase price within 10 days after the date of acceptance by the seller as follows: ''Total Price $90,000.00. Payable as follows: Forty Eight Thousand Dollars ($48,000) cash down payment. Seller to take back First Trust Deed in the amount of Forty Two Thousand Dollars

($42,000) payable in seven equal Installments of Six Thousand Dollars ($6,000) plus 6% per annum."

The document continues by stating that if the buyer fails to pay the balance of the purchase price, the amounts paid may be retained by the seller at his option as consideration for his execution of the agreement, and that the title must be free of liens and encumbrances except easements and restrictions of record, evidenced by a California Land Title Association standard policy issued by Title Insurance and Trust Co. It continues: "If Seller is unable to convey a marketable title, except as herein provided, within three months after acceptance hereof by Seller, or if the improvements on said property be destroyed or materially damaged prior to transfer of title or delivery of agreement of sale, then upon the demand of Buyer, said deposit and all other sums paid by Buyer shall be returned to Buyer, and this agreement as between Buyer and Seller shall be of no further effect, and Seller thereupon shall become obligated to pay all expenses incurred in connection with examination of title."

Taxes and insurance premiums are to be prorated.

The document provides that possession of the property must be delivered to the buyer "Upon acceptance of this offer . . ." and states further: "This offer shall be deemed revoked unless accepted in writing within 5 days after date hereof, and such acceptance is communicated to Buyer within said period."

Time is of the essence of the contract ". . . but Broker may, without notice, extend for a period of not to exceed one month the time for the performance of any act hereunder, except the time for the acceptance hereof by Seller and date of possession."

In its memorandum opinion the trial court points out that the offer made by the defendant and his coowner provided for a down payment of $48,000, but that the document signed by the Rohwers did not actually show a deposit of any cash, that a check for $2,000 was handed to the real estate agent and the proposed buyers promised to place $46,000 more in escrow at a future date, and that the buyers actually wrote a check for that amount and handed it to the realtor with the request that it be deposited in escrow in due course. It was not a certified or cashier's check but simply an ordinary check, the effective validity of which would depend on its clearance through the bank. While, according to the testimony of Mr. Rohwer, the banker had promised to lend this sum to him, there was no showing of any legal obligation to do so. Many

things might have happened to prevent the effective cashing of the check, among them being a later refusal of the banker to carry out the deal, or a failure, for some other good or bad reason, to honor it.

The main difference, however, between the written offer to sell and the deposit receipt lay in the right to possession of the real property. According to the deposit receipt, possession of the orange grove and its valuable crop was to be handed over to the Rohwers "Upon acceptance of this offer. . . ." Under the respondent's offer to sell, possession would only pass upon the payment of the $48,000 down payment and the execution of the note and trust deed. If Mr. Angelich had accepted the offer within five days, Mr. Rohwer, under his proposed agreement, could have immediately taken possession of the grove and caused the picking and sale of the entire citrus crop prior to the expiration of the 10 days within which he had told Mr. Frank Janoko, Jr., to deposit in escrow the other check for $46,000. Furthermore, the real estate agent was given the option in the receipt to extend the time for making this deposit for an additional period of 30 days. It would have been possible under such circumstances for Mr. and Mrs. Rohwer to pick and sell the orange crop and, if the down payment had not afterwards been made as contemplated, Mr. Angelich and his coowner could have been out an orange crop without any adequate compensation.

Needless to say, neither the contention of the respondent, the judgment of the court below, nor this opinion is intended to reflect upon the honesty and good faith of the Rohwers. The sole purpose of this discussion on our part is to confirm the fact that the trial court had cause to hold that the document entitled "deposit receipt" was not an unconditional acceptance of the offer made by Mr. Angelich and his coowner.

The trial judge had ample ground to hold that the document signed by the Rohwers was a counteroffer rather than an acceptance of the Angelich offer. One of the cases chiefly relied upon by respondent is *Born* v. *Koop*, 200 Cal.App.2d 519 [19 Cal.Rptr. 379], decided by this court (Brown, J.). Other cases supporting respondent's position are *Andrews* v. *Waldo*, 205 Cal. 764 [272 P. 1052]; *Dea* v. *Davy*, 150 Cal.App.2d 435 [309 P.2d 894]; *Gulart* v. *Azevedo*, 62 Cal. App. 108 [216 P. 405], and *Jepsen* v. *Marohn*, 22 S.D. 593 [119 N.W. 988, 21 L.R.A. N.S. 935].

The judgment is affirmed.

Brown (R.M.), J., and Stone, J., concurred.